PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 15-4012
_____

GEORGE T. VICKERS, JR.

v.

SUPERINTENDENT GRATERFORD SCI;
ATTORNEY GENERAL PENNSYLVANIA,
                                            Appellants
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(W.D. Pa. No. 2-15-cv-00432)
Honorable Robert C. Mitchell, Magistrate Judge
_____

Argued: December 5, 2016

Before:  FISHER[*], KRAUSE, and MELLOY[**], *Circuit Judges*.

---

[*] Honorable D. Michael Fisher, United States Circuit Judge for the Third Circuit, assumed senior status on February 1, 2017.
[**] Honorable Michael J. Melloy, Senior Circuit Judge, United States Court of Appeals for the Eighth Circuit, sitting by designation.

(Filed: June 6, 2017)
_____

George T. Vickers, Jr.
Graterford SCI
P.O. Box 244
Graterford, PA 19426
        Pro Se

Jerome A. Moschetta     [Argued]
Washington County Office of District Attorney
1 South Main Street
Suite 1003
Washington, PA 15301
        *Counsel for Appellants*

David R. Fine     [Argued]
K&L Gates LLP
17 North Second Street
18th Floor
Harrisburg, PA 17101

J. Nicholas Ranjan
K&L Gates LLP
210 Sixth Avenue
Pittsburgh, PA 15222
        *Amicus Counsel for Appellee*[1]

---

[1] We express our gratitude to David R. Fine and J. Nicholas Ranjam of K&L Gates LLP for accepting this matter *pro bono* and for the quality of their briefing and argument in this case. Lawyers who act *pro bono* fulfill the highest

—————————

OPINION

—————————


KRAUSE, *Circuit Judge*.

Given the fundamental importance of the right to a jury trial in our justice system, many states have promulgated rules, akin to the Federal Rules of Criminal Procedure, prescribing that the waiver of that right be on-the-record and approved by a court before a defendant enters a guilty plea or proceeds by way of non-jury trial. As a general matter, such procedures are diligently followed to ensure a defendant's waiver is knowing and voluntary but, on occasion, there are lapses. In this case, petitioner's counsel discussed with him generally the right to a jury trial but failed to secure an on-the-record waiver or to apprise petitioner of all aspects of his jury trial right before proceeding with a bench trial—conduct the District Court determined established ineffective assistance of counsel under *Strickland v. Washington*, 466 U.S. 668 (1984), and justified the grant of habeas relief.

On appeal by the Commonwealth, we are called upon to decide whether counsel's deficiency on these facts gave

———————————————————————

service that members of the bar can offer to indigent parties and to the legal profession.

3

rise to structural error, such that *Strickland* prejudice might be presumed, or whether petitioner is still required to establish prejudice. Because we conclude a showing of prejudice is required, we also have occasion to address the nature of that showing and to modify our holding in *United States v. Lilly*, 536 F.3d 190 (3d Cir. 2008), in light of intervening Supreme Court precedent. As we hold the proper prejudice inquiry in this situation is whether there is a reasonable likelihood that, but for his counsel's deficient performance, petitioner would have exercised his Sixth Amendment right to a jury trial, and petitioner here has failed to make that showing, we will reverse the judgment of the District Court.

## I.  Factual Background and Procedural History

Petitioner George Vickers's conviction stems from an incident in which Vickers punched the victim a single time but that punch caused severe injuries. As reflected in the record from his 2009 trial, the victim first encountered Vickers at a bar where Vickers was socializing with the victim's ex-girlfriend. After a brief stay at the bar, the victim left to catch a bus home. While waiting at the bus stop, the victim was "struck from behind" in the "upper neck, shoulder, and back area," which caused him to stumble. App. 38.[2] Though he did not know who shoved him, as he stumbled, he "looked up" and "saw George Vickers," who was "a step and a half away." App. 38. Within seconds of being shoved, the victim was "struck over his right eye by what he thought was a closed fist" and fell to the ground, unconscious. App. 38. The victim suffered numerous serious injuries, including a fractured skull, brain hemorrhaging, and bruising of the brain,

---

[2] All citations to the Appendix refer to what has been labeled Appendix Volume II on the public docket.

and was in a coma for four days as a result of the blow. Vickers was charged with aggravated assault, recklessly endangering another person, harassment, and disorderly conduct.

The issues on appeal all concern the adequacy of the legal representation Vickers received in connection with the waiver of his right to a jury trial. Pennsylvania law provides that in order for a criminal case to be tried without a jury, "[t]he judge shall ascertain from the defendant whether this is a knowing and intelligent waiver, and such colloquy shall appear on the record. The waiver shall be in writing, made a part of the record, and signed by the defendant, the attorney for the Commonwealth, the judge, and the defendant's attorney as a witness." 234 Pa. Code § 620. Vickers was originally represented by private counsel, and although his case was placed on the Court of Common Pleas calendar as a bench trial, these state-mandated procedures were not followed in Vickers's case. Vickers's private counsel later withdrew from his representation and, just a few weeks before Vickers's bench trial was to commence, an assistant public defender was assigned to the case. Because the case was already calendared as a bench trial, Vickers's new counsel presumed, without confirming, that Vickers had formally waived his right to a jury trial at an earlier point, and the bench trial went forward as scheduled. The judge who presided found Vickers guilty on all counts and sentenced him to seven to fourteen years' imprisonment.

Following his conviction, Vickers filed a petition for relief under Pennsylvania's Post-Conviction Relief Act ("PCRA"). In that petition he claimed, among other things, that he was deprived of effective assistance of counsel because trial counsel "misled [him] on his right to have a jury

5

trial," and failed to "obtain a valid waiver" of that right before proceeding with a bench trial. App. 61, 73. The PCRA Court held an evidentiary hearing, at which Vickers's trial counsel and Vickers testified regarding counsel's representation.

According to the testimony of counsel, when counsel saw the case was already scheduled as a bench trial he "assumed there had been a normal waiver at the bar and whatnot like that," and, based on that assumption, did not conduct any investigation to determine "what, in fact, occurred with regard to the waiver of [Vickers's] jury trial rights." App. 99-100. Counsel also testified, however, that he had spoken with Vickers "generally, about the right to a jury trial," App. 96, that he advised Vickers as to his right to have "12 men and women decide the facts of the case as opposed to a judge deciding the facts, and just the fundamentals," App. 95, and that he understood Vickers to be familiar with the criminal justice system because Vickers informed him that he had been charged with a felony in a neighboring county the previous year. Counsel further testified that he inquired of Vickers every time they spoke, including on the day of the trial, whether Vickers wanted a jury trial or a bench trial, and Vickers consistently wanted to proceed with the scheduled bench trial.

Counsel's testimony also detailed his strategic discussions with Vickers which, in counsel's view, had led Vickers to opt for a bench trial. For example, counsel testified he told Vickers that he believed Vickers's best chance of prevailing on the felony charge of aggravated assault was to emphasize that this was a "one-punch case," and to argue that Vickers did not have the requisite intent to cause the serious bodily injury necessary to support a conviction—a "narrow legal issue"—he told Vickers "might

6

be lost to a panel of jurors," but might be appreciated by a judge who could more reliably "distinguish between the aggravating factors." App. 107, 109. Counsel elaborated that he warned Vickers that there were risks associated with a bench trial because "this courtroom can be a conservative with personal injuries, and that's a judge's prerogative when they listen to the evidence," App. 95, but he ultimately recommended that Vickers pursue a bench trial for strategic reasons. According to counsel, Vickers "never" expressed a preference for a jury trial during these tactical conversations, App. 118, but rather "indicated he wanted to go forward" with a bench trial, App. 95.

Counsel could not recall specifically what he told Vickers about his right to a jury trial and did not state—and was not specifically asked by Vickers's PCRA counsel—if he informed Vickers that any jury verdict would have to be unanimous. Nonetheless, while counsel acknowledged that he "did not go through the whole colloquy form" with Vickers, App. 99, he confirmed that he firmly believed, as a result of his many conversations with Vickers leading up to trial and Vickers's past experience with the criminal justice system, that Vickers was aware of his right to proceed by jury trial instead of a bench trial, "understood the difference between the two," and chose to go forward with a bench trial. App. 100.

Vickers's testimony at the PCRA hearing painted a very different picture. Vickers testified that he "advised [his counsel] during several phone conversations . . . that it was [his] intent to take this to a jury trial," App. 139, that he had no understanding at the time of the trial that he was giving up this right, and that he first discovered that he had a constitutional right to a jury trial when doing legal research

7

for his appeal while incarcerated. Before that point, according to Vickers, he mistakenly thought only a majority of the jury was required to return a guilty verdict but, even on that mistaken assumption, he believed this "majority rules" system was preferable to relying on the sole discretion of a judge, App. 140, and would have exercised his right to a jury trial had he been given the opportunity.

On cross-examination, when presented with a guilty plea form that he had signed in 2004 in connection with one of his prior convictions, Vickers acknowledged he had signed the form and had checked the boxes on it that appeared next to each of the rights attendant to a jury trial, but he asserted he had not read the form. That form provided that, by pleading guilty, Vickers was waiving his right to a jury trial and all attendant rights, including the right to have "[a]ll 12 members of the jury finely selected . . . be satisfied that the Commonwealth had proven [his] guilt beyond a reasonable doubt on each charge, that is, the vote of all 12 must be guilty before [he] can be found guilty." App. 149-50.

The PCRA court carefully evaluated the conflicting testimony presented at the hearing and found "the testimony of [counsel] credible and the testimony of George Vickers not credible." App. 176. Accordingly, the court reasoned that, even though Vickers had not waived his right to a jury trial in writing or orally on the record, he was not denied effective assistance of counsel because he made a strategic decision to pursue a bench trial and "freely, voluntarily, and intelligently waived his jury trial rights." App. 177.

The Pennsylvania Superior Court affirmed, finding "no basis" to disturb the PCRA court's credibility determinations, and concluding, like the PCRA court, that because Vickers's

waiver of his jury trial right was knowing and voluntary, he had not established that he received ineffective assistance of counsel.[3] App. 191.

His state remedies exhausted, Vickers filed a petition for habeas relief pursuant to 28 U.S.C. § 2254 in which he re-asserted his claim that counsel was ineffective for proceeding with a bench trial when Vickers had not waived his right to a

_____

[3] Vickers argues that the PCRA court and Superior Court erred by extrapolating from his 2004 plea form to hold that any future waiver of the jury trial right would be knowing and voluntary. We agree that such reasoning, had it formed the basis for the courts' decisions, would be disturbing and fallacious. Here, however, it is apparent that, to the extent those courts relied on the document at all, it was in connection with broader credibility findings, determining—from Vickers's assertion in his direct testimony that he had no knowledge of any right to a jury trial before he began preparing his appeal, the cross-examination of Vickers concerning the plea form that proved otherwise, and Vickers's counsel's testimony that Vickers indicated his understanding, based in part on his criminal history, of his right to a jury trial and how it differed from a bench trial—that "the testimony of [counsel was] credible and the testimony of George Vickers [was] not credible." App. 176. The PCRA court was best situated to assess credibility at the hearing, and, for that limited purpose, we perceive no error in its use of the form or the Superior Court's reliance, in turn, on the PCRA court's credibility assessment.

jury trial.[4]  The District Court agreed with Vickers, holding that the Superior Court's decision was "contrary to or involved an unreasonable application of clearly established federal law," because, irrespective of the testimony at the PCRA hearing, the record reflected that there was no written or oral waiver of Vickers's right to a jury trial. *Vickers v. Wenerowicz*, No. 2:15-CV-432, 2015 WL 7308673, at *6 (W.D. Pa. Nov. 19, 2015).[5]  Citing to the familiar two-part test for ineffective-assistance-of-counsel claims set forth in *Strickland v. Washington*, 466 U.S. 668 (1984), the District Court determined, first, that counsel's performance was constitutionally deficient for failing to obtain a formal jury-trial waiver, and, second, albeit without discussing what prejudice must be shown in this circumstance or whether Vickers had made that showing, that Vickers also "was prejudiced" by his counsel's deficient performance. *Vickers*, 2015 WL 7308673, at *6.  Accordingly, the District Court held Vickers was "entitled to relief here," and granted him a

---

[4] Vickers filed his habeas petition in the United States District Court for the Western District of Pennsylvania, and the parties consented to proceed through final judgment before a Magistrate Judge.  As the Magistrate Judge's opinion and order thus constitute those of the District Court, *see* 28 U.S.C. § 636(c)(1), we will refer to the Magistrate's rulings as those of the District Court throughout this opinion.

[5] Vickers also raised three other claims for relief that were denied by the District Court.  Vickers does not challenge those rulings on appeal.

10

writ of habeas corpus.[6]  *Id.*  The Commonwealth timely appealed, and we appointed amicus curiae to assist Vickers in his appellate proceedings.[7]

[6] In its opinion granting Vickers's petition, the District Court noted "a complete dereliction of duty" by the Office of the District Attorney for "fail[ing] to defend th[e] litigation with any degree of diligence" on the Commonwealth's behalf over the course of the proceeding.  *Vickers*, 2015 WL 7308673, at \*2.  The troubling pattern of behavior to which the District Court referred dates back even as far as the state court proceeding, where, e.g., the Commonwealth failed to file a brief in response to Vickers's direct appeal.  That pattern also continued into Vickers's federal proceedings when, without any explanation or request for an extension, the Commonwealth failed to meet its deadline to file a response to Vickers's habeas petition.  When the District Court still had not received any response from the Commonwealth nearly two months after that deadline, it entered an order for the Commonwealth to show cause why Vickers's request for relief should not be granted due to the Commonwealth's failure to respond to the petition.  Again, the Commonwealth failed to respond, prompting the District Court to issue another order—this time granting the writ of habeas corpus and ordering Vickers discharged from custody unless the Commonwealth retried him within ninety days.  After more than a month passed with still no response from the Commonwealth, the District Judge issued a third order scheduling a release hearing for the ninety-day date.  Nearly a week after this order, the Commonwealth finally awakened to the situation and filed a motion for reconsideration, which the District Court granted.

11

## II. Jurisdiction and Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 2254 and we have jurisdiction under 28 U.S.C. § 2253. Because the District Court did not conduct an evidentiary hearing, our review of the District Court's grant of Vickers's

---

We are deeply disturbed that, notwithstanding that wake-up call, the Commonwealth's "dereliction of duty" has continued into this appeal, requiring this Court to issue a court order for the Commonwealth to reply to the brief filed by amicus on Vickers's behalf. At oral argument, counsel for the Commonwealth acknowledged these troubling lapses and offered an apology to the Court. We trust that the Office of the District Attorney, going forward, will represent the Commonwealth and fulfill its obligations to the courts with far greater diligence and professionalism.

[7] Vickers proceeded pro se on appeal and filed a responsive brief supporting the District Court's grant of relief on his ineffective assistance claim but also raising a host of other claims, such as an alleged violation of his right to a speedy trial, presumably as alternative grounds for affirming. We do not address the substance of those other claims here, as they were not properly exhausted in the state court, and, in any event, appear meritless to the extent they are intelligible. However, we appointed counsel as amicus to further explore Vickers's more substantial ineffective assistance claim, and we consider counsel's thorough briefing and excellent advocacy as simply expounding on Vickers's own argument. For that reason and for simplicity's sake, we will identify arguments, whether raised by amicus or Vickers, as those of "Vickers."

petition is plenary. *McMullen v. Tennis*, 562 F.3d 231, 236 (3d Cir. 2009).

## III.  Analysis

Our review of habeas claims is governed by the Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA"), which instructs that where, as here, a state court has rejected a petitioner's claim on the merits, a federal court may not grant the writ unless the state court's decision "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  A decision is "'contrary to' clearly established federal law if  it 'applies a rule that contradicts the governing law set forth' in Supreme Court precedent, or if it 'confronts a set of facts that are materially indistinguishable from a decision of the Supreme Court and nevertheless arrives at a result different' from that reached by the Supreme Court." *Eley v. Erickson*, 712 F.3d 837, 846 (3d Cir. 2013) (alteration and citation omitted) (quoting *Williams v. Taylor*, 529 U.S. 362, 405 (2000)).  A decision contains an "unreasonable application" of clearly established law if no "fairminded jurist[]" could agree with the state court's decision. *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

While a determination that a state court's analysis is contrary to or an unreasonable application of clearly established federal law is necessary to grant habeas relief, it is not alone sufficient.  That is because, despite applying an improper analysis, the state court still may have reached the correct result, and a federal court can only grant the Great Writ if it is "firmly convinced that a federal constitutional right has been violated," *Williams*, 529 U.S. at 389.  *See also*

13

*Horn v. Banks*, 536 U.S. 266, 272 (2002) ("[w]hile it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review . . . none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard"). Thus, when a federal court reviewing a habeas petition concludes that the state court analyzed the petitioner's claim in a manner that contravenes clearly established federal law, it then must proceed to review the merits of the claim de novo to evaluate if a constitutional violation occurred.[8] *See Lafler v. Cooper*, 566 U.S. 156, 174 (2012).

Below, we first address whether AEDPA deference to the state court's denial of relief was warranted, concluding that it was not because the state court's analysis was contrary to clearly established Supreme Court precedent. We then turn to our own de novo review of Vickers's claim that he received ineffective assistance of counsel.

### A.    AEDPA Deference

---

[8] These steps sometimes merge in cases in which the federal habeas court determines that the state court engaged in an "unreasonable application" of clearly established Supreme Court precedent because it will be apparent from the explication of why the state court unreasonably applied that precedent that, under any reasonable application, a constitutional violation did occur. *See, e.g., Washington v. Sec'y Pa. Dep't of Corr.,* 801 F.3d 160, 170 (3d Cir. 2015); *Eley*, 712 F.3d at 861.

14

The Commonwealth contends on appeal that the judgment should be reversed because the District Court failed to accord appropriate deference to the state court under AEDPA, and, applying proper deference, the Superior Court did not engage in an "unreasonable application" of *Strickland*. We agree with the Commonwealth that the District Court erred, but not because it failed to apply AEDPA deference.

Indeed, as a threshold matter, we conclude that no AEDPA deference is warranted here because the Superior Court failed to apply *Strickland* altogether, resulting in a decision "contrary to" clearly established federal law. That is, even though the Superior Court correctly identified *Strickland* as controlling, it concluded there was no ineffective assistance of counsel on the ground that Vickers's waiver of his right to a jury trial was knowing and voluntary. That, however, is precisely the reasoning that the Supreme Court held was contrary to *Strickland* in *Lafler v. Cooper,* 566 U.S. 156 (2012), where the state court had concluded there was no ineffective assistance of counsel merely because it found petitioner's rejection of a plea offer to be knowing and voluntary. *Id.* at 173. Declining to accord AEDPA deference, the Supreme Court held that "[a]n inquiry into whether the rejection of a plea is knowing and voluntary . . . is not the correct means by which to address a claim of ineffective assistance of counsel," and, because the state court "fail[ed] to apply *Strickland* to assess the ineffective-assistance-of-counsel claim [petitioner] raised, [its] adjudication was contrary to clearly established federal law." *Id.* In Vickers's case, in other words, the Superior Court's decision was contrary to both *Strickland* and *Lafler*.

This conclusion, however, does not end our inquiry or require that the Great Writ be granted. Instead, as in *Lafler*

15

itself, it merely forfeits the AEDPA deference to which the state court's denial of relief would otherwise be entitled and dictates that we review Vickers's *Strickland* claim de novo. *See Lafler*, 566 U.S. at 173-74; *Breakiron v. Horn*, 642 F.3d 126, 131 (3d Cir. 2011). That is, we no longer owe deference to the state court's legal conclusions, *Wiggins v. Smith*, 539 U.S. 510, 542 (2003), but still "must presume that state-court factual findings"—including its credibility findings—"are correct unless the presumption is rebutted by clear and convincing evidence," *Breakiron*, 642 F.3d at 131; *Jacobs v. Horn*, 395 F.3d 92, 100 (3d Cir. 2005).[9] Bearing in mind the applicable standard of review, we turn to the merits of Vickers's ineffective-assistance-of-counsel claim.

## B. De Novo Review of Vickers's Claim

Reviewing Vickers's claim of ineffective assistance of counsel de novo, we consider, first, whether counsel's

---

[9] We have not had occasion, to this point, to specifically address the deference we afford to credibility findings, as opposed to factual findings more generally, once we determine that AEDPA deference is inapplicable. There is no question, however, that credibility findings in that context are also presumed correct absent "clear and convincing evidence" to the contrary, *Breakiron*, 642 F.3d at 131, because "[i]n cases where the AEDPA standards of review do not apply, federal habeas courts apply pre-AEDPA standards of review," *Jacobs*, 395 F.3d at 100, and pre-AEDPA, "federal habeas courts [had] no license to redetermine credibility of witnesses whose demeanor ha[d] been observed by the state trial court, but not by them," *Marshall v. Lonberger*, 459 U.S. 422, 434 (1983).

16

performance was deficient and, second, whether Vickers has established the requisite prejudice. [10]

### 1. *Strickland* Performance Prong

We begin with *Strickland*'s performance prong. When assessing whether a petitioner has demonstrated that his attorney's representation was constitutionally deficient, we look to "the facts of the particular case, viewed as of the time of counsel's conduct," *Strickland*, 466 U.S. at 690, and evaluate whether counsel's performance "fell below an

---

[10] We may begin our analysis with either of *Strickland*'s two prongs and follow "the practical suggestion in *Strickland* [that we] consider the prejudice prong before examining the performance of counsel prong" where that approach "is less burdensome to defense counsel," *Lilly*, 536 F.3d at 196, or makes it "easier to dispose of an ineffectiveness claim," *Strickland*, 466 U.S. at 697. Here, however, neither of those circumstances pertain, as we have a fully developed record from the PCRA hearing at which counsel already testified, the District Court addressed both deficiency and prejudice, and our review of the particular deficiencies alleged here may provide guidance to trial courts and defense counsel that will benefit, not burden, the criminal justice system. *See id.* (encouraging reviewing courts to review ineffectiveness claims in a way that does not "become so burdensome to defense counsel that the entire criminal justice system suffers as a result"). We therefore will address both components of the *Strickland* inquiry.

objective standard of reasonableness" under "prevailing professional norms," *id.* at 688.

Vickers has met this standard here because his attorney's failure to ensure that he properly waived his right to a jury trial was not "within the range of competence demanded of attorneys in criminal cases." *Id.* at 687. The Supreme Court has repeatedly emphasized the importance of a criminal defendant's Sixth Amendment right to a trial by jury and that this right may only be ceded by a knowing, voluntary, and intelligent waiver. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 236-37 (1973); *Adams v. U.S. ex rel. McCann*, 317 U.S. 269, 276-77 (1942). And the importance of this fundamental right is reflected in both the Federal Rules of Criminal Procedure and the Pennsylvania Criminal Code, which mandate that all waivers of jury trials be in writing, signed by both parties, and approved by the court on the record. *See* Fed. R. Crim. P. 23; 234 Pa. Code § 620.

Of course, the touchstone is whether a defendant's jury-trial waiver is knowing and voluntary, so that the failure to comply with these procedures does not per se establish a constitutional violation. *See Gov't of Virgin Islands v. Parrott*, 476 F.2d 1058, 1061-62 (3d Cir. 1973); *Commonwealth v. Mallory*, 941 A.2d 686, 697-98 (Pa. 2008). At the same time, however, compliance provides strong assurance ex ante that the defendant has been fully apprised of his right to a jury trial and that his waiver is not subject to constitutional challenge. As we have previously encouraged of our colleagues in the District Court in the context of Rule 23 colloquies, such on-the-record assurances by the defendant himself that his waiver is knowing and voluntary will "help[] insulate a jury-trial waiver from later attack by a defendant

18

who claims he did not fully understand the nature of the right before he forfeited it . . . [and] will create a record capable of withstanding subsequent challenges, satisfy the court's responsibility, facilitate intelligent appellate review, conserve scarce judicial resources, and enhance the finality of criminal convictions." *Lilly*, 536 F.3d at 197 (internal quotation marks omitted). Under prevailing professional norms, competent defense counsel is expected to ensure a criminal defendant receives the benefit of those well-established procedures.

Vickers's counsel, on the other hand, did not conduct any investigation to determine whether Vickers had been given an appropriate colloquy before his case was scheduled for a bench trial, and simply "assumed there had been a normal waiver at the bar and whatnot like that," App. 99-100. Had counsel taken the minimal step of reviewing the case file, the docket, or the trial court record to confirm there had been a formal waiver—or had he simply inquired of the trial court, opposing counsel, prior defense counsel, or his own client to verify that a proper waiver had occurred—he would have discovered his assumption was in error and he could have ensured, consistent with the Pennsylvania Code, that the judge engaged in an appropriate colloquy and that Vickers waived his jury trial right in writing before proceeding with a bench trial. Yet, he did not. Nor did counsel review the colloquy form privately with Vickers to confirm that Vickers was apprised of all attendant aspects of his jury-trial right before he waived that right.

Although we are sympathetic to the difficult position in which counsel was placed when he inherited this case only weeks before trial, prevailing professional norms required and continue to require counsel in this circumstance to verify, through a review of the record or an inquiry with the court or

prior counsel, that the client formally waived his jury trial right. *See Rompilla v. Beard*, 545 U.S. 374, 383 (2005) (holding that counsel's failure to examine court file on past conviction prior to sentencing constituted deficient performance); *cf. Kimmelman v. Morrison*, 477 U.S. 365, 385 (1986) (finding deficient performance where attorney failed to file a suppression motion "not due to strategic considerations, but because . . . he was unaware of the [constitutional violation]"). Because counsel failed to do so here, his conduct fell below "an objective standard of reasonableness." *Strickland*, 466 U.S. at 688.

## 2.     *Strickland* Prejudice Prong

We turn next to the prejudice prong. When assessing *Strickland* prejudice, we typically ask "whether the petitioner has shown that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different," with "a reasonable probability" meaning "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. Here, however, between the arguments of the litigants and the relevant case law, we are confronted with two discrete ways to frame the prejudice analysis.

Vickers argues that because counsel's ineffectiveness deprived him of his right to a jury trial and the deprivation of that right constitutes structural error, prejudice under *Strickland* must be presumed and Vickers is automatically entitled to relief. The Commonwealth, on the other hand, argues that prejudice cannot be presumed and the relevant inquiry is whether the outcome of the proceeding would have been different had Vickers been tried by a jury rather than a

20

judge.[11]   Below, we address: (a) whether prejudice even arguably could be presumed in this case; (b) if not, what prejudice inquiry is appropriate; and (c) how the proper prejudice inquiry applies to Vickers's case.

### a)       Whether Prejudice Should be Presumed

Turning first to Vickers's contention that *Strickland* prejudice can be presumed, the Supreme Court has long held that constitutional errors do not require automatic reversal, and that courts may apply a "harmless error" analysis to determine whether the mistake affected the outcome of the trial. *Chapman v. California*, 386 U.S. 18, 22 (1967).   The Supreme Court has also held, however, that there are certain errors, deemed "structural" errors that so "affect[] the framework within which the trial proceeds" that they cannot

---

[11]   Vickers contends that because the Commonwealth addressed only *Strickland*'s performance prong in its opening brief, it has waived any argument based on the prejudice prong.   Although it is generally correct that an issue not raised in an appellant's opening brief is waived, *Laborers' Int'l Union of N. Am., AFL-CIO v. Foster Wheeler Energy Corp.*, 26 F.3d 375, 398 (3d Cir. 1994), we may not relieve Vickers of his burden to prove both deficiency and prejudice to obtain habeas relief because federal courts are only empowered to grant the writ "on the ground that [the petitioner] is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). We therefore reject Vickers's contention that he is automatically entitled to relief if he can demonstrate deficient performance, and we will proceed to address whether Vickers was prejudiced by his counsel's ineffective performance.

21

be subject to harmless error analysis. *Arizona v. Fulminante*, 499 U.S. 279, 310 (1991). For example, the Supreme Court has identified the denial of the right to counsel of a defendant's choice, *United States v. Gonzalez-Lopez*, 548 U.S. 140, 149-50 (2006), the denial of the right to a public trial, *Waller v. Georgia*, 467 U.S. 39, 49-50 & n.9 (1984), and the denial of the right to self-representation, *McKaskle v. Wiggins*, 465 U.S. 168, 177 n.8 (1984), as errors "with consequences that are necessarily unquantifiable and indeterminate" such that reversal is required without further analysis when they occur, *Gonzalez-Lopez*, 548 U.S. at 150. *See also United States v. Lewis*, 802 F.3d 449, 461-62 (3d Cir. 2015) (en banc) (Smith, J., concurring) (reviewing categories of cases constituting structural error).

Even accepting Vickers's premise that prejudice may be presumed when counsel's deficient performance results in structural error,[12] Vickers would not be entitled to such a presumption here because no structural error resulted from his counsel's deficiency.

---

[12] This issue is currently pending before the Supreme Court, which granted certiorari in *Weaver v. Massachusetts,* 137 S. Ct. 809 (2017), and held oral argument on April 19, 2017, to address the question "whether a defendant asserting ineffective assistance that results in a structural error must, in addition to demonstrating deficient performance, show that he was prejudiced by counsel's ineffectiveness." *See* Petition for Writ of Certiorari at 3, *Weaver v. Massachusetts*, No. 16-240 (S. Ct. Aug. 18, 2016), 2016 WL 4474568. Given our disposition of Vickers's claim, we have no cause to hold his case c.a.v. pending a decision in *Weaver.*

Whether the deprivation of the jury trial right itself constitutes structural error is a question that neither the Supreme Court nor this Court has squarely addressed. The Supreme Court has discussed the "profound" importance of the Sixth Amendment right to a jury trial, observing that the right "reflect[s] a fundamental decision about the exercise of official power" in our criminal justice system. *Duncan v. Louisiana*, 391 U.S. 145, 155-56 (1968). And where a defendant has been completely denied the right to a jury trial because neither the trial court nor his attorney informs him of that right, at least one Court of Appeals has held the error is structural and prejudice should be presumed when evaluating an ineffective assistance claim. *See McGurk v. Stenberg*, 163 F.3d 470, 474 (8th Cir. 1998); *see also Miller v. Dormire*, 310 F.3d 600, 603 (8th Cir. 2002).

Here, however, Vickers does not and cannot claim he suffered a total deprivation of his right to a jury trial as a result of his counsel's deficiency. Indeed, the record is unambiguous that Vickers was apprised of his right to a jury trial because the state court found credible Vickers's counsel's testimony that he and Vickers discussed his right to a jury trial on multiple occasions—a finding we must presume to be correct, even on de novo review, *Breakiron*, 642 F.3d at 131; *Jacobs*, 395 F.3d at 100. Rather, Vickers argues that his waiver was rendered unintelligent and involuntary either because counsel failed to secure an on-the-record waiver or because counsel did not specifically apprise him of all aspects of a jury trial, he was unaware of the requirement of juror unanimity when he waived. The premise of this second argument is dubious at best, given the PCRA

court's fact-finding to which we must defer.[13] *Id.* Even if we engage both arguments, however, they fail on the merits under controlling case law.

We have previously held, consistent with other Courts of Appeals that have addressed the issue, that an on-the-record waiver, while probative and strongly encouraged, is not a prerequisite to a knowing and voluntary waiver and, hence, is not constitutionally required. *Parrott*, 476 F.2d at 1062*; United States v. Boynes*, 515 F.3d 284, 286 (4th Cir. 2008); *United States v. Rodriguez*, 888 F.2d 519, 527 (7th Cir. 1989); *see also Lilly*, 536 F.3d at 197-98 (noting in the Rule 23 context that, while strongly advisable, an on-the-record waiver colloquy is not a constitutional requirement). As relevant here, then, its omission is not per se constitutional error, much less structural error.

Nor has the Supreme Court or any Court of Appeals held to date that a defendant must be specifically apprised of the requirement of juror unanimity in order to knowingly and intelligently waive his jury-trial right. On the contrary, the Courts of Appeals that have confronted that argument have rejected it. *See Sowell v. Bradshaw*, 372 F.3d 821, 833-34

---

[13] Implicit in the state court's credibility determinations is its finding that Vickers was aware that any jury verdict would have to be unanimous. For example, the state court credited counsel's testimony that Vickers "understood the difference between the two [types of trials]," App. 100, and rejected as incredible Vickers's testimony, which included his assertion that he mistakenly believed at the time he could be convicted by only a majority of the jurors.

(6th Cir. 2004) (holding that knowledge of the juror unanimity requirement is not constitutionally required in order for a defendant to give a knowing and voluntary waiver of his right to a jury trial); *U.S. ex rel. Williams v. DeRobertis*, 715 F.2d 1174, 1180 (7th Cir. 1983) (holding the Constitution requires only that the defendant understand "that the choice confronting him was, on the one hand, to be judged by a group of people from the community, and on the other hand, to have his guilt or innocence determined by a judge").[14] And even Rule 11 of the Federal Rules of Criminal Procedure, governing the necessary procedures to ensure that a guilty plea is knowing and voluntary, does not require that a defendant be specifically apprised of the juror-unanimity requirement but only of his general "right to a jury trial," to relinquish that right in connection with a plea waiver. *See* Fed. R. Crim. P. 11(b)(1)(C); *see also United States v. Pagan-Ortega,* 372 F.3d 22, 29 (1st Cir. 2004) (concluding that not even a Rule 11 violation, let alone a constitutional violation, occurred when defendant was not informed of his right to a unanimous jury as part of his plea colloquy). While this

---

[14] Vickers relies on the Sixth Circuit's opinion in *United States v. Martin*, 704 F.2d 267, 273 (6th Cir. 1983), as support for his argument that a defendant must be informed of the unanimity requirement to give a knowing and voluntary waiver of his right to a jury trial. In *Sowell*, however, the Sixth Circuit explicitly rejected this reading of *Martin*, holding that *Martin* did not "establish[] a constitutional requirement that the defendant understand that the verdict must be unanimous." *Sowell*, 372 F.3d at 833.

25

Court has not yet opined on whether the failure to apprise a defendant of the unanimity requirement would render a jury-trial waiver constitutionally infirm, it is sufficient for today's purposes to observe that where there is a substantial question that such even results in constitutional error, it assuredly does not result in structural error. *See Neder v. United States*, 527 U.S. 1, 7 (1999) (explaining that structural errors are "a limited class of fundamental constitutional errors that 'defy analysis by harmless error standards.'" (quoting *Fulminante,* 499 U.S. at 309).

Our conclusion that prejudice must be demonstrated, not presumed, in this circumstance is further supported by the approach the Supreme Court and this Court have taken in addressing similar claims in the past. In *Hill v. Lockhart*, 474 U.S. 52 (1985), the Supreme Court was presented with an ineffective-assistance-of-counsel claim based on counsel's failure to inform a petitioner of the parole consequences of his guilty plea, and despite petitioner's allegation that this lack of complete information about the right that he was relinquishing made his entire guilty plea "involuntary" and "unintelligent," *id.* at 56—an allegation closely tracking Vickers's—the Court explicitly held that a prejudice analysis was necessary before relief could be granted and proceeded to address that prong of the petitioner's *Strickland* claim, *id.* at 59.

Likewise, in *United States v. Lilly*, we were presented with a claim of ineffective assistance nearly identical to Vickers's when a petitioner, who had been in the courtroom when counsel waived his jury-trial right in favor of a bench trial and who had signed a formal waiver form only after the trial, asserted that he had not been fully apprised of his right to a jury trial and thus had not waived it knowingly and

26

voluntarily. 536 F.3d at 192-93. To determine whether petitioner had established ineffective assistance, we did not simply presume prejudice but performed a traditional *Strickland* prejudice analysis before ultimately concluding that he was not entitled to relief. *Id.* at 196. Thus, while we leave for another day whether a total failure to inform a defendant of his right to a jury trial could give rise to a claim of structural error, *cf. McGurk*, 163 F.3d at 474, we hold, consistent with *Hill* and *Lilly*, where a defendant has been apprised of his basic right to a jury trial, counsel's failure to inform him of certain aspects of that right does not give rise to structural error. And, absent structural error, there is no colorable argument that prejudice should be presumed in this case.

### b) Determining the Proper Prejudice Test

Having concluded that a showing of prejudice is required, we next address what that showing should be. The Commonwealth argues in favor of the approach we articulated in *Lilly*, where we held that a petitioner who was convicted upon a bench trial and claimed prejudice as a result of his counsel's failure to ensure a valid jury-trial waiver must show a reasonable probability that "in the absence of counsel's advice, another fact finder (i.e., a jury) would have been reasonably likely to arrive at a different outcome." 536 F.3d at 196. Although *Lilly* correctly reflects that we must address the prejudice question as part of our *Strickland* analysis, a trio of Supreme Court cases explaining the appropriate inquiry in similar circumstances illustrates that a modification to *Lilly*'s prejudice test is necessary.

First, in *Hill*, as noted above, the Court considered an ineffective-assistance-of-counsel claim based on counsel's

27

deficiently informing petitioner of the consequences of his guilty plea. 474 U.S. at 55. When addressing *Strickland*'s prejudice prong, the Court did not focus on whether counsel's deficient performance caused the outcome of the proceeding to change—i.e., the court did not speculate as to whether petitioner would have been convicted had he gone to trial instead of pleading—but instead asked "whether counsel's constitutionally ineffective performance affected the outcome of the plea process." *Id.* at 59. Because the appropriate focus went to the process that led to petitioner forfeiting a constitutional right, the Court held that the petitioner could demonstrate prejudice if he could show a "reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Id.*

In *Roe v. Flores-Ortega*, the Court applied similar reasoning when addressing the appropriate prejudice inquiry for a petitioner alleging that counsel's deficient performance led him to forfeit his right to a direct appeal of his conviction. 528 U.S. 470, 475 (2000). The Court again framed the inquiry in terms of the process leading up to the petitioner's decision to forego a judicial proceeding to which he was constitutionally entitled, holding that the petitioner could demonstrate prejudice if he could show that his counsel's ineffective performance led to his not pursuing an appeal that he "otherwise would have taken." *Id.* at 484. Because the petitioner had been deprived of the proceeding altogether, the Court explained that it would be "unfair to *require* a[] . . . defendant to demonstrate that his hypothetical appeal might have had merit" and a showing that "but for counsel's deficient conduct, he would have appealed" was all that *Strickland* requires. *Id.* at 486.

28

Most recently in *Lafler*, the Supreme Court confirmed that this process-based analysis, focusing on whether a petitioner lost his ability to exercise a constitutional protection he otherwise would have invoked, is necessary to evaluate prejudice for ineffective assistance claims alleging a defect in the process leading up to a judicial proceeding. 566 U.S. at 169. In *Lafler*, the petitioner claimed ineffective assistance when his counsel advised him against accepting a guilty plea by erroneously insisting that the prosecution would be unable to establish an element of the crime for which he was charged. 556 U.S. at 161. Thus, *Lafler* presented the inverse of *Hill* as, rather than being induced to accept a guilty plea as a result of counsel's ineffectiveness, the petitioner in *Lafler* alleged that his counsel's deficient performance forced him to stand trial and receive a harsher sentence than he would have had he accepted the plea. *Id.* at 163-64.

The Court explicitly rejected the Government's argument that there could be no *Strickland* prejudice because "[a] fair trial wipes clean any deficient performance by defense counsel during plea bargaining," and held that the petitioner could show prejudice if he could demonstrate that but for counsel's ineffective assistance, "he and the trial court would have accepted the guilty plea." *Id.* at 174. Although acknowledging that the "[t]he goal of a just result is not divorced from the reliability of a conviction," the Court in *Lafler* made explicit the principle underlying its decisions in *Hill* and *Flores-Ortega*—that when evaluating prejudice in the context of a pre-trial error that changed the nature of the subsequent proceedings, the "question is not the fairness or reliability of the trial but the fairness and regularity of the processes that preceded it, which caused the defendant to lose

benefits he would have received in the ordinary course but for counsel's ineffective assistance." *Id.* at 169.

*Lafler* requires us to revisit the prejudice analysis we applied in *Lilly*. At the time *Lilly* was decided, it was apparent that a *Strickland* prejudice inquiry was necessary for certain claims of ineffective assistance that led to a deprivation of pre-trial process rights, but it was not clear how broadly the Court intended to apply the prejudice test it announced in *Hill* and *Flores-Ortega*. While those cases addressed the appropriate way to frame *Strickland* prejudice when counsel's ineffective assistance caused a defendant to forego a judicial proceeding altogether—i.e., a trial in *Hill* and a direct appeal in *Flores-Ortega*—they did not squarely address the situation presented in *Lilly*, *Lafler*, and the case before us here, where, despite counsel's pre-trial ineffective assistance, the defendant received, and ultimately was convicted in, an error-free trial. In light of this ambiguity, we did not extend *Hill* and *Flores-Ortega* to the circumstances before us in *Lilly*, and reverted to the language the Court had used in *Strickland*, that a finding of prejudice requires "a reasonable probability that, but for counsel's unprofessional errors, *the result of the proceeding* would have been different." *Lilly*, 536 F.3d at 196 (quoting *Strickland*, 466 U.S. at 694).

After *Lafler*, however, there is no longer any ambiguity about the proper prejudice test in this situation. *Lafler* makes clear that the process-based test of *Hill* and *Flores-Ortega* is not limited to situations in which counsel's ineffectiveness prevented a judicial proceeding from occurring at all, but also applies when the defendant ultimately received a fair adjudication, so long as counsel's ineffectiveness affects not the propriety of the adjudicatory

30

proceeding itself, but "the fairness and regularity of the processes that preceded it." *Lafler*, 566 U.S. at 169. And when *Hill*, *Flores-Ortega*, and *Lafler* are read together, there is no question that where a defendant claims ineffective assistance based on a pre-trial process that caused him to forfeit a constitutional right, the proper prejudice inquiry is whether the defendant can demonstrate a reasonable probability that, but for counsel's ineffectiveness, he would have opted to exercise that right.

We therefore revise our prejudice test set forth in *Lilly*,[15] and turn to the dispositive question here: whether Vickers has met his burden by establishing on this record a reasonable probability that but for his counsel's failure to ensure a proper waiver of his Sixth Amendment right to be tried before a jury, he would have exercised that right.

c) Application of the Proper Prejudice Test

---

[15] Our holding regarding the appropriate prejudice inquiry in this context, which merely aligns *Lilly* with the Supreme Court's subsequent decision in *Lafler*, does not necessitate en banc review. As occurs from time to time, "a panel of our Court may decline to follow a prior decision of our Court without the necessity of an en banc decision when the prior decision conflicts with a Supreme Court decision." *United States v. Tann*, 577 F.3d 533, 541 (3d Cir. 2009); *see also United States v. City of Philadelphia*, 644 F.2d 187, 192 n.3 (3d Cir. 1980) ("As an inferior court in the federal hierarchy, we are, of course, compelled to apply the law announced by the Supreme Court as we find it on the date of our decision.").

Applying this prejudice analysis to the facts of this case, we conclude that Vickers has not met his burden. Although counsel was deficient in failing to ensure that Vickers had properly waived his right to a jury trial before proceeding with a bench trial, the record is devoid of any credible evidence that Vickers otherwise would have opted for a jury trial and affirmatively indicates that he made an informed, strategic decision to proceed with a bench trial after numerous consultations with his counsel.

Even though we review the state court's legal conclusions de novo, we continue to defer under AEDPA to its factual and credibility findings, *Jacobs*, 395 F.3d at 100, and here, the state court found Vickers's counsel credible when he testified that he and Vickers discussed the possibility of a jury trial each time they spoke, that he explained to Vickers that a jury trial would mean that "12 men and women decide the facts of the case as opposed to a judge deciding the facts," and that even on the morning of the trial he reminded Vickers that he was facing "serious charges" and could still ask for a jury trial, but Vickers "indicated he wanted to go forward." App. 95, 98.

Most importantly, counsel testified that he explained to Vickers the strategic advantages he perceived in pursuing a bench trial, i.e., he believed a bench trial was Vickers's best chance to be acquitted on the most serious charge he faced— aggravated assault; it would be difficult for the Commonwealth to prove that Vickers had the requisite intent to commit aggravated assault based on just one punch; and, when pursuing this theory, there would be a "tactical advantage" to selecting a bench trial because a judge was more likely than a jury to appreciate this "narrow legal issue." App. 107, 109. Counsel discussed this strategy with Vickers,

warned Vickers that there was risk inherent in choosing a bench trial because the "courtroom can be a conservative with personal injuries," App. 95, and recommended nonetheless that Vickers proceed by way of bench trial. Vickers's responses led his counsel to believe Vickers was aware of his right to proceed by way of jury trial, that he "understood the difference," between a jury trial and a bench trial, App. 100, and that he was choosing for strategic reasons to proceed with a bench trial.

The only evidence in the record to the contrary, Vickers's testimony that he repeatedly requested a jury trial and did not know he had a right to a jury trial until he was preparing his appeal, was deemed "not credible" by the PCRA court. App. 176. Thus, although counsel erroneously failed to ensure that Vickers waived on the record and, even assuming counsel's deficiency left Vickers unaware of the requirement of juror unanimity, Vickers has not established on this record a "reasonable probability" that, but for counsel's deficiency, Vickers would have elected to proceed by way of jury trial. Accordingly, he has failed to demonstrate the prejudice *Strickland* requires in this circumstance, and his habeas petition must be denied.

## IV.    Conclusion

For the foregoing reasons, we will reverse the District Court's order granting Vickers a writ of habeas corpus and remand the case for proceedings consistent with this opinion.

33