**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

_____

No. 19-2633

_____

ALEXANDER G. KEATON,

Appellant

v.

SUPERINTENDENT GREENE SCI; THE DISTRICT ATTORNEY OF THE COUNTY
OF PHILADELPHIA; THE ATTORNEY GENERAL OF THE STATE OF
PENNSYLVANIA

_____

Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2-11-cv-07225)
District Judge: Honorable Paul S. Diamond

_____

Argued on November 17, 2020

Before: AMBRO, BIBAS and ROTH, <u>Circuit Judges</u>

(Opinion filed: March 2, 2021)

Patrick J. Egan, Esq. (Argued)
Fox Rothschild
2000 Market Street
20th Floor
Philadelphia, PA 19103

        Counsel for Appellant

Benjamin Halle, Esq. (Argued)
Max C. Kaufman, Esq.
Philadelphia County Office of District Attorney
3 South Penn Square
Philadelphia, PA 19107

Ronald Eisenberg, Esq.
Office of Attorney General of Pennsylvania
1600 Arch Street
Suite 300
Philadelphia, PA 19103

Counsel for Appellees

_____

OPINION[*]

_____

AMBRO, Circuit Judge

Alexander Keaton appeals from the District Court's denial of his petition for a writ

of habeas corpus under 28 U.S.C. § 2254.  He argues his trial counsel provided

ineffective assistance at the guilt phase by failing to present character witnesses and an

expert report supporting an alternative explanation of a victim's death.  For the reasons

explained below, we affirm.

I.

In 1994, a Pennsylvania state court jury convicted Keaton of first-degree murder

of his ex-girlfriend, Sherrill Hall, two counts of rape of Nadine Scott and Michelle

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

Billingsley, and related offenses. Keaton allegedly attacked all three women—all of whom were addicted to crack cocaine, like Keaton, and all of whom knew him—in vacant houses in the same North Philadelphia neighborhood over a period of about six months. *See Commonwealth v. Keaton*, 729 A.2d 529, 532–36 (Pa. 1999) ("*Keaton I*"). On direct appeal, the Pennsylvania Supreme Court affirmed Keaton's death sentence for the murder, as well as ten to forty years' imprisonment for the remaining offenses. *Id.* at 532, 536.

Keaton sought relief under Pennsylvania's Post-Conviction Relief Act ("PCRA") and asked to stay his execution. After more than a decade of PCRA litigation, Keaton was resentenced to life imprisonment in 2014, and the Pennsylvania Supreme Court rejected all other claims for relief. *See Commonwealth v. Keaton* ("*Keaton II*"), 45 A.3d 1050, 1094–95 (Pa. 2012); *Commonwealth v. Keaton* ("*Keaton III*"), 82 A.3d 419, 420 (Pa. 2013).

In November 2011, Keaton sought federal habeas relief. In 2014, after state remedies were exhausted, he raised several claims challenging his murder conviction before Magistrate Judge Lloret, who recommended denial of Keaton's petition in a 105-page report. The District Court adopted that recommendation. *Keaton v. Folino*, No. 11-7225, 2019 WL 2525609, at *1 (E.D. Pa. June 19, 2019). On appeal to us, Keaton presses only two arguments: that his trial counsel provided ineffective assistance by failing to 1) present character testimony about Keaton's reputation in the community for peacefulness and non-violence, and 2) challenge properly the Commonwealth's theory of

3

homicide, as evidenced by a new medical expert report from Dr. Jonathan Arden. We granted a certificate of appealability on the two issues.

The District Court had jurisdiction under 28 U.S.C. §§ 2241 and 2254. We have jurisdiction under 28 U.S.C. §§ 1291 and 2253. Our review of the habeas petition is plenary, which means "we review the state courts' determinations under the same standard that the District Court was required to apply." *Thomas v. Horn*, 570 F.3d 105, 113 (3d Cir. 2009).

## II.

### A.    Character Testimony

Keaton argues his trial counsel rendered ineffective assistance by failing to call four character witnesses—his sisters Denise and Lolita Keaton, his aunt Alberta Horton, and their family friend Kimberly Anderson. The witnesses testified at sentencing and the PCRA hearings, and submitted affidavits during the PCRA proceedings, but did not testify at the trial's guilt phase. To prevail on a claim of ineffective assistance of counsel, Keaton must show that his counsel's performance was objectively unreasonable, and he was prejudiced as a result. *See Strickland v. Washington*, 466 U.S. 668, 690–93 (1984). To establish prejudice, Keaton must show that there is a reasonable probability that, if counsel's performance had not been deficient, the "result of the proceeding would have been different." *Id.* at 694. The Pennsylvania Supreme Court ruled that the failure to call these witnesses did not prejudice Keaton. *Keaton II*, 45 A.3d at 1073–74.

4

We agree with the District Court that the Pennsylvania Supreme Court's decision is entitled to deference and also that it was reasonable.[1] Under the Antiterrorism and Effective Death Penalty Act of 1996, we can only grant relief to Keaton if he shows the state habeas court's decision was contrary to clearly established law as determined by the Supreme Court or an unreasonable determination of the facts based on evidence presented in the state court proceeding. *See* 28 U.S.C. § 2254(d). Contrary to Keaton's argument, the Pennsylvania Supreme Court properly applied the *Strickland* standard despite noting once in its opinion that "[it] cannot conclude the outcome of the trial *would have* differed" and leaving out the "reasonable probability" language. *Keaton II*, 45 A.3d at 1074 (emphasis added). That reference is the kind of acceptable "shorthand reference" recognized in *Woodford v. Visciotti*, 537 U.S. 19, 23 (2002) (*per curiam*), especially given the Pennsylvania Supreme Court here properly articulated the *Strickland* standard elsewhere in its opinion. *Keaton II*, 45 A.3d at 1061; *Cf. Saranchak v. Sec'y, Pa. Dep't of Corr.*, 802 F.3d 579, 599 (3d Cir. 2015) (holding the PCRA court erred on the legal standard due to its "repeated misstatements of the law").

Having concluded the Pennsylvania Supreme Court correctly applied the legal standard, we look next to its determination of the facts. Once again, the Court reasonably

---

[1] Because we agree with the Pennsylvania Supreme Court's decision on the prejudice prong of *Strickland*, we need not address whether the failure to present character evidence was indeed objectively unreasonable performance. *See Wilson v. Sellers*, 138 S. Ct. 1188, 1192 (2018) ("[W]hen the last state court to decide a prisoner's federal claim explains its decision on the merits in a reasoned opinion . . . , a federal habeas court simply reviews the specific reasons given by the state court and defers to those reasons if they are reasonable.").

concluded that Keaton was not prejudiced because the proposed witnesses' testimony would have been undercut by their infrequent interaction with Keaton near the time of the crime, especially when his behavior changed as a result of his addiction. *Keaton II*, 45 A.3d at 1074; *see, e.g.*, JA 667 (Denise Keaton testifying that "[w]e wouldn't want to be around [Keaton]" when he was high).

Keaton argues that the Pennsylvania Supreme Court neglected to consider the evidence presented at the PCRA hearings, where the proposed witnesses testified more specifically about Keaton's reputation in the community around the time of the crime. But the Court did consider that evidence as part of the record. *Keaton II*, 45 A.3d at 1072 (acknowledging that Keaton cites the "PCRA *testimony* and affidavits") (emphasis added). In any event, even if we did not accord deference to that Court's determination, relief would still not be appropriate on fresh review. *See Vickers v. Superintendent Graterford SCI*, 858 F.3d 841, 848–49 (3d Cir. 2017). Other overwhelming evidence undercuts any character evidence, especially the testimony of two rape victims that Keaton savagely assaulted them around the same time. *See Keaton I*, 729 A.2d at 532–34. The proposed character witnesses' largely conclusory testimony, taken together with the fact they were Keaton's family and friends and had an incentive to testify on his behalf, would not have swayed a jury. *See, e.g.*, JA 788 ("Q[:] Okay. And his reputation, what is his reputation in the community for being peaceful and nonviolent? A [Ms. Anderson] [:] Good.").

Thus, we affirm the District Court's decision and hold Keaton was not prejudiced by his trial counsel's alleged failure to call character witnesses.

6

### B. Medical Expert Report

Next, Keaton argues his trial counsel rendered ineffective assistance by failing to investigate properly an alternative cause of Hall's death. In support of that claim, he presents Dr. Arden's expert report, which concludes Hall suffered accidental cardiac arrest during consensual, rough sex while intoxicated. Keaton concedes this argument was not raised in the state habeas proceeding and thus is procedurally defaulted, but he argues the report excuses any default because it shows his innocence under *Schlup v. Delo*, 513 U.S. 298 (1995).

The *Schlup* standard is a "stronger showing than that needed to establish prejudice." *Id.* at 327. The petitioner must show that, in light of new reliable evidence, "it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt." *Id.* Keaton falls far short of that standard. Dr. Arden does not base his opinion on any new evidence that the prosecution's expert did not consider at trial, nor does Dr. Arden discredit the prosecution's expert's methodology. Instead, he simply reviewed the same evidence and reached a different conclusion. Indeed, the jury already heard and considered Keaton's theory that Hall's death was part of a "sex game," *Keaton I*, 729 A.2d at 535, so we cannot say Dr. Arden's report is "so persuasive and exculpatory that all 12 members of a jury who voted to convict [Keaton] of first-degree murder now would change their minds." *Goldblum v. Klem*, 510 F.3d 204, 227 (3d Cir. 2007).

Relying on our recent decision in *Howell v. Superintendent Albion SCI*, 978 F.3d 54 (3d Cir. 2020), Keaton argues that the District Court must at least hold an evidentiary

7

hearing to determine if Dr. Arden's report shows his innocence. But Keaton reads *Howell* too broadly. There, three of the prosecution's trial witnesses recanted their testimony, and we held that an evidentiary hearing was needed because their recanting "cast[s] significant doubt on [the defendant's] conviction, particularly when considered together with [another suspect's] confession." *Id.* at 55. Here, Dr. Arden's expert report falls so short of the *Schlup* innocence standard that no evidentiary hearing is required.

*   *   *   *   *

Thus, we affirm the District Court's denial of Keaton's petition for a writ of habeas corpus.