# IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

STATE OF DELAWARE      )
     )
     )    ID No. 1610013171
v.      )
     )
     )
STEPHEN WHEELER,      )
     )
    Petitioner/Defendant.      )

Submitted: May 23, 2022

Decided: June 14, 2022

*Upon Petitioner's Amended Motion for Postconviction Relief (R-1)*

## DENIED

## MEMORANDUM OPINION AND ORDER

Patrick Collins, Esquire, 8 East 13th Street, Wilmington, DE 19801; Attorney for Petitioner/Defendant.

Amanda Reese Nyman, Esquire and Kevin Gardner, Esquire, Deputy Attorneys General, Department of Justice, 13 The Circle, Georgetown, DE 19947; Attorneys for State of Delaware.

**KARSNITZ, R. J.**

**INTRODUCTION**

The right of Delawareans to a trial by jury in a criminal case under the United States[1] and Delaware[2] Constitutions is a fundamental one that is not to be waived lightly or ill-advisedly. This is a postconviction matter alleging that defense counsel at trial ("Trial Counsel") gave deficient advice to Stephen Wheeler ("Petitioner") which deprived Petitioner of that right. Specifically, Petitioner alleges that Trial Counsel told him that "a bench trial would be better because certain evidence could come in with a judge that could not come in with a jury."[3] Petitioner argues that this advice was deficient because the evidence admitted or excluded under the Delaware Uniform Rules of Evidence ("DRE") is the same in a bench or a jury trial.[4]

I reject Petitioner's claim that he was given incorrect advice as to the type of evidence a Judge could receive in a bench trial, and I accept what Trial Counsel testified he advised Petitioner.

---

[1] U.S. Const. amend. VI.
[2] Del. Const. art. I, § 7.
[3] See Affidavit of Stephen Wheeler, A32. "A" refers to Appendix to Amended Motion for Postconviction Relief.
[4] A32.

This raises the related question of the extent to which the colloquy between Petitioner and the Court about the waiver of his right to jury trial overcomes other deficiencies in the waiver process, such as the absence of a written waiver and ambiguities in Trial Counsel's advice. For the reasons discussed below, I find that the colloquy in this case was thorough, appropriate, and more than adequate to establish that the waiver of jury trial was knowing, intelligent and voluntary, and overcomes other deficiencies.

## FACTS

### Facts from Trial

In the early morning hours of October 20, 2016, in Millville, Delaware, a 64-year-old man was awakened in his bed by several suspects who put a blanket over his head and assaulted him. He suffered multiple injuries including a broken nose and broken ribs.[5] The victim also testified that numerous electronics and his wallet containing cash were taken.[6] Petitioner was charged in connection with the incident, as well as Lauren Melton ("Melton") and Jerome Wheeler.[7] Both Melton and Jerome Wheeler pled guilty as codefendants prior to Petitioner's trial.[8] Melton testified

---

[5] A311-318.
[6] A316-323.
[7] Al93-211, 260-261, A364-366.
[8] A193-211, 260-261, A364-366.

2

that Petitioner had discussed with her plans to rob the victim on October 19, 2016, the day before the home invasion robbery.[9]  Text messages between Melton and the telephone she identified as belonging to Petitioner and which was found by police in Petitioner's possession included the following messages: "The back door is unlocked", "We are laying down", "I'm scared lol", "He is sleep", "I'm looking for the keys", "He called the cops", "What TF am I going to do yo" and, "Call your mom in u delete the messages".[10]  Melton testified that Petitioner, Jerome Wheeler, and "Pat" came into the victim's house, that Petitioner did not participate in the beating of the victim, but that all three men went through the house, taking mostly electronics.[11]

**Facts from Evidentiary Hearing**

There were two witnesses at the April 8, 2022 evidentiary hearing: Petitioner and Trial Counsel.

Petitioner

Petitioner testified that on March 23, 2022 he had a video call with Trial Counsel before trial.[12] Petitioner testified that Trial Counsel told him on that call that

---

[9] A346.
[10] A360-363.
[11] A350-355.
[12] T 5, 22.  "T" refers to the transcript of the April 8, 2022 evidentiary hearing.

3

he would have a jury trial,[13] and there was no discussion about having a bench trial.[14] Petitioner also met with Trial Counsel for his final case review on March 21, 2018, and Petitioner testified that a waiver of jury trial was not discussed at that time.[15] Petitioner testified that a waiver of jury trial was not discussed until Trial Counsel's second meeting with him on March 26, 2018, the first day of trial.[16] Petitioner testified Trial Counsel then told him that a bench trial would be best because certain evidence could come in during a bench trial that could not come in in a jury trial.[17] Petitioner testified that Trial Counsel did not explain what that evidence was, and that Petitioner did not ask.[18] Petitioner testified that he did not ask what that evidence was because he was nervous, it was his first trial, and he thought the evidence would prove his innocence; however, he acknowledged that he should have asked.[19] Petitioner testified that he wanted a jury trial, but ultimately decided on a bench trial because of Trial Counsel's advice that it would allow the admission of more evidence.[20] Petitioner testified that Trial Counsel informed him that he was going to go in front of a Judge, and that he

---

[13] T6.
[14] T7.
[15] T14.
[16] T9.
[17] T9,18.
[18] T10,18.
[19] T12,18-20.
[20] T10,17-18.

4

should answer "yes" to all of the Judge's questions.[21] Petitioner testified that he was not being truthful when he told the Judge that no one was forcing or coercing him to waive his right to a jury trial, and that he was just doing what his lawyer told him to do.[22] Petitioner testified that he did not want a bench trial.[23]

Petitioner testified that he has the following convictions: a 2017 felony possession of a controlled substance in a tier 3 quantity, a 2015 felony possession of a firearm by person prohibited, and a 2017 misdemeanor theft by false pretense less than $1,500,[24] in addition to the felony charges he was convicted of in this case.

Trial Counsel

Trial Counsel testified that he discussed the differences between a bench trial and a jury trial, as well as the disadvantages and advantages of each, with Petitioner.[25] Trial Counsel testified that he had these conversations with the Defendant on at least two occasions: one on the day of trial and the other before trial.[26] Trial Counsel testified that he explained a bench trial to Petitioner by

---

[21] T10-12.
[22] *Id.*
[23] T11.
[24] T15-16.
[25] T22-24.
[26] *Id.*

saying that the Judge "wears both hats;" i.e., is trier of fact and arbiter of the law.[27] Trial Counsel testified that he did not tell Petitioner that a bench trial would be better than a jury trial because certain evidence could be admitted in a bench trial that could not be admitted in a jury trial.[28] Trial Counsel testified that the first time he discussed having a bench or jury trial with Petitioner, no decision was made by Petitioner.[29] The second time he discussed it with Petitioner the day of trial, was when Petitioner made the decision to have a bench trial.[30] Trial Counsel testified that he informed Petitioner of some of the disadvantages of a jury trial: a codefendant might testify, the racial makeup of a Sussex County jury might not be to his advantage, twelve jurors have to be persuaded instead of one judge, and a judge might consider more evidence in a bench trial with the understanding that he could give it the appropriate weight.[31] Trial Counsel testified that he never told Defendant what type of trial to choose, that it is always Petitioner's choice, and that he never said it was

---

[27] T31-32,35-36,44-45.
[28] T41.
[29] T24.
[30] T24,25.
[31] T28-33.

better to have a bench trial rather than a jury trial.[32] Trial Counsel also testified that he has approximately 35 years of criminal trial experience.[33]

## I.    PROCEDURAL HISTORY

Delaware State Police arrested Petitioner on October 20, 2016.[34] On January 9, 2017, a Sussex County Grand Jury indicted him on charges of Home Invasion, Assault Second Degree, Robbery First Degree, and Conspiracy Second Degree.[35] On March 26, 2018, Petitioner waived his right to a jury trial.[36] After conducting a colloquy with Petitioner, the Court found that Petitioner made a knowing, intelligent, and voluntary decision to have a judge try his case instead of a jury.[37]

Petitioner's nonjury trial began on March 26, 2018 and lasted two days.[38] At the close of the State's case, Petitioner made a motion for judgment of acquittal, which the Court denied.[39] On March 27, 2018, the Court found Petitioner guilty on all counts and ordered a presentence investigation.[40] On April 6, 2018, the Court sentenced Petitioner to a total of 13 years at Level 5 followed by probation.[41]

---

[32] T37.
[33] T40.
[34] Al0-16.
[35] DI 7, 8. "DI" refers to docket entry items in *State v. Stephen Wheeler,* ID# 1610013171.
[36] DI 57; Al88-192, 218-224.
[37] A218-224.
[38] A214-217.
[39] A616-620.
[40] DI 58; A639-658.
[41] DI 63; A661-691.

7

Petitioner appealed.[42] The Delaware Supreme Court affirmed Petitioner's convictions and sentence on April 11, 2019.[43]

On January 27, 2020, Petitioner filed a *pro se* first motion for postconviction relief. On September 27, 2021, Petitioner, by and through appointed postconviction counsel, filed an Amended Motion for Postconviction Relief (the "Rule 61 Motion"). The Rule 61 Motion states one claim for postconviction relief: that Petitioner was deprived of his right to a jury trial due to the ineffective assistance of Trial Counsel. On December 1, 2021, Trial Counsel filed an affidavit in response to the Rule 61 Motion (the "Affidavit").[44] On January 21, 2022, the State of Delaware filed a response to the Rule 61 Motion (the "Response").[45] On February 24, 2022, Petitioner filed a reply to the State's Response (the "Reply").[46] After a review of the record of prior proceedings in the case, the Rule 61 Motion, the Affidavit, the Response, and the Reply, I determined that an evidentiary hearing was necessary.[47] The evidentiary hearing was held on April 8, 2022. The parties agreed to submit

---

[42] DI 72.
[43] *Wheeler v. State*, 209 A.3d 24 (Table) (Del. Apr. 11, 2019); DI 83-84; A794-796.
[44] Super. Ct. Crim. R. 61(g)(2).
[45] Super. Ct. Crim. R. 61(f)(1) and (2).
[46] Super. Ct. Crim. R. 61(f)(3).
[47] Super. Ct. Crim. R. 61(h).

simultaneous post-hearing memoranda. The State submitted its Letter Memorandum on May 18, 2022 and Petitioner submitted his Post Hearing Memorandum on May 23, 2022. This is my ruling on the Rule 61 Motion.

## II.    PROCEDURAL BARS UNDER RULE 61(i).

I first address the four procedural bars of Superior Court Criminal Rule 61(i).[48] If a procedural bar exists, as a general rule, I will not address the merits of the postconviction claim.[49] Under the Delaware Superior Court Rules of Criminal Procedure, a motion for post-conviction relief can be barred for time limitations, successive motions, failure to raise claims earlier in the proceedings, or former adjudication.[50]

First, a motion for postconviction relief exceeds time limitations if it is filed more than one year after the conviction becomes final.[51] Wheeler's conviction became final for purposes of Rule 61 at the conclusion of direct review when the Delaware Supreme Court issued its mandate on April 11, 2019.[52] Since Petitioner

---

[48] *Ayers v. State*, 802 A.2d 278, 281 (Del.2002) (citing *Younger v. State,* 580 A.2d 552, 554 (Del. 1990)).
[49] *Bradley v. State*, 135 A.3d 748 (Del 2016); *State v. Page*, 2009 WL 1141738, at*13 (Del. Super. April 28, 2009).
[50] Super. Ct. Crim. R. 61(i).
[51] Super. Ct. Crim. R. 61(i)(1).
[52] Super. Ct. Crim. R. 61(m)(3).

filed his *pro se* motion for postconviction relief less than a year later, on January 27, 2020, this bar does not apply.

Second, second or subsequent motions for postconviction relief are not permitted unless certain conditions are satisfied.[53]  Since this is Petitioner's first Rule 61 Motion, this bar does not apply.

Third, grounds for relief "not asserted in the proceedings leading to the judgment of conviction" are barred unless the movant can show "cause for relief" and "prejudice from [the] violation."[54]  Ordinarily, a showing of cause is not satisfied by merely showing that a claim was not raised.  Petitioner must show that "some external impediment" prevented him from raising the claim.[55]  Ordinarily, to demonstrate prejudice, Petitioner must show that a "substantial likelihood" exists that if the issue had been raised, the outcome would have been different.[56]  However, this Rule 61 Motion is based on a claim of ineffective assistance of counsel.  It is well-settled Delaware law that, as collateral claims, ineffective assistance of counsel claims are properly raised for the first time in postconviction proceedings.[57]  Thus, this bar does not apply.

---

[53] Super. Ct. Crim. R. 61(i)(2).
[54] Super. Ct. Crim. R. 61(i)(3).
[55] *Younger v. State*, 580 A.2d 552, 556 (Del. 1990).
[56] *Flamer v. State*, 585 A.2d 736, 748 (Del. 1990).
[57] *State v. Schofield*, 2019 WL 103862, at *2 (Del. Super. January 3, 2019); *Thelemarque v. State*, 2016 WL 556631, at *3 (Del. Feb. 11, 2016) ("[T]his Court will not review claims of ineffective

Fourth, grounds for relief formerly adjudicated in the case are barred.[58] Petitioner's claim of ineffective assistance of counsel was not formerly adjudicated in this case. Thus, this bar does not apply.

Finally, the four procedural bars to do not apply either to a claim that the Court lacked jurisdiction or to a claim that pleads with particularity that new evidence exists that creates a strong inference of actual innocence,[59] or that a new retroactively applied rule of constitutional law renders the conviction invalid.[60] Petitioner does not claim that he has new evidence that creates an inference of his actual innocence, or that a new retroactively applied rule of constitutional law renders his conviction invalid.

Thus, none of the procedural bars under Rule 61 apply to the claim in this Rule 61 Motion, and I will consider it on the merits.

## III. PETITIONER'S BURDEN OF PROOF

The starting point for assessing Petitioner's claim is the two-pronged standard established in *Strickland v. Washington,*[61] as adopted in Delaware by

---

assistance of counsel for the first time on direct appeal."); *Watson v. State*, 2013 WL 5745708, at *2 (Del. Oct. 21, 2013) ("It is well-settled that this Court will not consider a claim of ineffective assistance that is raised for the first time in a direct appeal.").

[58] Super. Ct. Crim. R. 61(i)(4).
[59] Super. Ct. Crim. R. 61(i)(5).
[60] Super. Ct. Crim. R. 61(d)(2)(i) and (ii).
[61] 466 U.S. 668 (1984).

*Albury v. State*.[62]  Under *Strickland* and *Albury*, Petitioner must show that (1) Trial Counsel's representation "fell below an objective standard of reasonableness" (the "performance prong"); and (2) the "deficient performance prejudiced [his] defense." (the "prejudice prong").[63]  Petitioner must prove both prongs of the *Strickland* test.

In considering the performance prong, the United States Supreme Court was mindful that "[S]trategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."[64]  *Strickland* requires an objective analysis, making every effort "to eliminate the distorting effects of hindsight" and to "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[65]  In addition, "strategic choices about which lines of defense to pursue are owed deference commensurate with the reasonableness of the professional judgments on which they are based."[66]  As to the performance prong, Petitioner must show that Trial Counsel's decisions were not reasonable strategic decisions.

---

[62]  551 A.2d 53 (Del. 1988).
[63]  *Strickland* at 687.
[64]  *Id.* at 690.
[65]  *Id.* at 689.
[66]  *Id.* at 681.

As to the prejudice prong of *Strickland*, Petitioner must demonstrate that there exists a reasonable probability that, but for Trial Counsel's unprofessional errors, the outcome of the trial would have been different.[67] Even if counsel's performance *were* professionally unreasonable, it would not warrant setting aside the judgment of conviction if the error had no effect on the judgment.[68] A showing of prejudice "requires more than a showing of theoretical possibility that the outcome was affected."[69]

The *Strickland* prejudice prong has been modified for cases such as this one where there is a claim that Trial Counsel ineffectively represented his client by failing to ensure that Petitioner exercised his right to a jury trial. Under *Vickers v. Superintendent Graterford SCl*,[70] Petitioner must demonstrate a reasonable probability that, but for Trial Counsel's failure to ensure a proper waiver of his right to be tried before a jury, he would have exercised that right.[71]

*Strickland* also teaches that there is no reason for a court deciding an ineffective assistance of counsel claim to approach the inquiry in any particular order, or to address both prongs of the inquiry if the defendant makes an insufficient

---

[67] *Id.* at 687; *Zebroski v. State,* 822 A.2d 1038, 1043 (Del. 2003); *Wright v. State,* 671 A.2d 1353, 1356 (Del. 1996).
[68] *Strickland,* at 691.
[69] *Frey v. Fulcomer,* 974 F.2d 348, 358 (3d Cir. 1992).
[70] 858 F.3d 841 (3rd Cir. 2017).
[71] *Id.* at 857.

13

showing on one. A court need not determine whether Trial Counsel's performance was deficient *before* examining the prejudice suffered by the defendant because of the alleged deficiencies. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, that course should be followed.[72]   In every case the court should be concerned with whether, despite the strong presumption of reliability, the result of the particular proceeding is unreliable because of a breakdown in the adversarial process that our system counts on to produce just results.[73]

The State refers me to four Delaware Superior Court decisions relating to the alleged ineffective assistance of counsel in the context of a waiver of jury trial.  In *State* v.*Couch*[74] defendant argued that his trial counsel acted unreasonably by misrepresenting facts that coerced him into waiving his right to a jury trial.[75] Specifically, defendant alleged that his trial counsel told him that the State would drop one of the two robbery first degree counts if he waived a jury (which the State did) and that the State had strong evidence to convict him of both counts, with which defendant disagreed.[76] The Court found that defendant failed to establish that

---

[72] *Strickland,* at 697.
[73] *Id*. at 696.
[74] 2007 WL 987403 (Del. Super. Mar. 30, 2007), *aff'd,* 945 A. 2d 593 (Table) (Del. 2008).
[75] *Id*. at *2.
[76] *Id* at *2-4.

14

he was prejudiced.[77] The Court also found that any deficiency was cured because the trial judge had emphasized to defendant his right to a jury trial and the consequences of waiving that right in an extensive colloquy.[78] As a result, the Court denied defendant's motion for postconviction relief.[79] Defendant appealed the Superior Court's denial to the Delaware Supreme Court, which applied the *Strickland* test and found that defendant twice told the trial judge that he wanted a bench trial, and that defendant had not demonstrated that, but for error on the part of trial counsel, he would not have been convicted.[80]

In *State v. Taye*[81] defendant argued that his jury trial waiver was not voluntary, knowing, and intelligent because he was not aware when he made his decision to waive jury trial that his counsel would concede his identity as the driver and his reckless conduct at trial.[82] Under *Strickland,* the Court held that defendant bore the burden of proof that trial counsel's performance was unreasonable.[83] The Court found that defendant bore the burden of proof that, but for trial counsel's alleged error, defendant would have been acquitted, and that if substantial evidence existed

---

[77] *Id.*
[78] *Id.* at *4.
[79] *Id.*
[80] *State v. Couch,* 945 A.2d 593 at *2 (Table) (Del. 2008).
[81] 2014 WL 785033 (Del. Super. Feb. 26, 2013), *aff'd,* 2014 WL 4657310 (Del. Sept. 18, 2014).
[82] *Id.* at *3.
[83] *Id.,* citing *Couch, supra.*

to support his conviction, his claim was undermined.[84]   The Court also held that, even if counsel was deficient, any deficiency is cured when the trial judge engages in a colloquy with defendant, ensuring that he understood his right to a jury trial and the consequences of any waiver.[85] The Court found that the trial judge engaged in an extensive colloquy with defendant, and that as a result defendant's waiver was voluntary, knowing, and intelligent.[86] The Court also found that trial counsel's advice to defendant to waive a jury trial was a strategic and reasonable decision, and that there was substantial evidence to support his conviction.[87] Therefore, the Court found that the two-pronged *Strickland* test had not been met, and that defendant's claim of ineffective assistance of counsel failed.[88]

In *State v. Hall*,[89] defendant argued that trial counsel was ineffective in advising him to waive his right to a jury trial on two firearm possession charges that were severed.[90] The Court found this argument to be without merit since the trial judge had engaged in a thorough colloquy with defendant, and his decision to waive his jury trial was knowingly and intelligently made.[91] The Court also found that

---

[84] *Id.*
[85] *Id.*
[86] *Id.* at *4.
[87] *Id.*
[88] *Id.*
[89] 2016 WL 241192 (Del. Super. Jan. 19, 2016).
[90] *Id.* at *1.
[91] *Id.* at *3.

even assuming that counsel's performance was deficient, any deficiency was cured by the Court's colloquy.[92]

In the most recent Superior Court case, *State v. Caulk*,[93] defendant argued that trial counsel erred by allowing his case to be tried by a judge, who was aware of his criminal history.[94] The Court found that trial counsel could not be deficient under these circumstance because defendant's decision to waive his jury trial was his decision alone.[95] Defendant has the ultimate authority to make certain fundamental decisions regarding his case, including whether to plead guilty, waive trial by jury, testify, and appeal,[96] because these decisions are too important to be made by anyone else.[97] However, trial counsel retains a duty to advise his client regarding the waiver of these rights.[98] The Court stated that defendant must prove some deficiency in trial counsel's discussion with him about the waiver of a jury trial, and also prove that deficiency tainted his waiver to such a degree as to overcome the record of his waiver colloquy.[99] The Court found that the trial judge conducted an extensive

---

[92] *Id.*
[93] 2021 WL 2662250 (Del. Super. June 29, 2021).
[94] *Id*. at *7.
[95] *Id.*
[96] *Id.,* citing *Taylor v. State,* 28 A.3d 399,406 (Del. 2011) (quoting *Jones v. Barnes,* 463 U.S. 745,751 (1983)). *See also* Delaware Rules of Prof. Conduct, Rule 1.2(a).
[97] *Id.*, citing *Cooke v. State,* 977 A.2d 803, 842 (Del. 2009).
[98] *Id.*
[99] *Id.*

17

colloquy with defendant and that any deficiencies on trial counsel's part were cured by the trial judge's extensive waiver colloquy.[100]

## IV. ANALYSIS

**Performance of Trial Counsel**

<u>Advice of Trial Counsel</u>

The gravamen of Petitioner's claim that Trial Counsel's assistance was ineffective is that Trial Counsel advised him that he should waive a jury trial because certain impeachment evidence might be admitted in a bench trial that could not be admitted in a jury trial.[101]  Certain salacious evidence was found on a cellphone related to the unseemly character of Melton:  that the victim induced Melton, then 19 years old, to have sex with another young woman while he watched and masturbated, that the victim induced Melton and other young women to stay with him by offering them drugs and that Melton was a prostitute.  Trial Counsel had previously stated in a pretrial office conference that he wanted to admit this evidence to impeach Melton's character for truthfulness or untruthfulness under the Delaware Uniform Rules of Evidence ("DRE") Rule 608, but the Judge ruled that this sort of evidence was inadmissible for impeachment.  Trial Counsel may have

---

[100] *Id.* at *8. The Court did not address defendant's claim of prejudice because defendant had failed to show that trial counsel performed deficiently.
[101] A832.

18

believed that the Judge would be more lenient with the consideration of such evidence in a bench trial than in a jury trial since he was both the trier of fact and the arbiter of the law. However, this was difficult to ascertain because the Affidavit did not directly respond to the allegations of ineffective assistance of counsel. The Affidavit was hardly a model of clarity and left ambiguity as to exactly what advice Trial Counsel gave Petitioner regarding the waiver of jury trial. This is one of the reasons I held an evidentiary hearing, to hear the direct testimony of Trial Counsel, subject to cross-examination by Petitioner.

In any event, Petitioner argues that, since evidence admitted or excluded under the DRE for purposes of determination of witness credibility by the trier of fact is treated the same in a bench or a jury trial, Trial Counsel's advice was erroneous and deficient.[102] Petitioner also argues that, given the Judge's prior ruling that the evidence was inadmissible under DRE 608, Trial Counsel should not have then advised Petitioner to opt for a bench trial.[103] However, during the trial, Trial Counsel asked witnesses questions about their sexual proclivities, including if they had had a threesome, which the Judge allowed over the State's objection.[104] Trial Counsel also asked and elicited responses regarding prostitution and drug use, and pointed out the unseemliness of the 64-year-old victim consorting with a 19-year-

---

[102] Amended Motion for Postconviction Relief, p.32.
[103] Amended Motion for Postconviction Relief, pp.32-33.
[104] A381, although the Court did not allow Trial Counsel to ask if there was a video of the threesome. A381.

old woman.  In other words, Trial Counsel was able to get the salacious impeachment evidence into the record, although presumably the Judge did not consider it as to credibility, in keeping with his prior ruling on inadmissibility.

Based on the testimony at the evidentiary hearing, summarized above, I must weigh the credibility of Petitioner against that of Trial Counsel.  I find serious discrepancies in Petitioner's testimony.  He himself admitted that he was untruthful with the Court during his jury trial waiver colloquy immediately preceding his trial.[28] During that colloquy, he told the Court that he wanted to have a bench trial and that no one was forcing him to do that.[29] However, at the evidentiary hearing, he admitted that that was not true, that he wanted a jury trial, and that he was forced into having a bench trial.[30]

On the other hand, Trial Counsel's testimony at the evidentiary hearing was consistent throughout.  His testimony that he did not tell Petitioner that a bench trial would be better than a jury trial, because certain evidence could be admitted in a bench trial that could not be admitted in a jury trial, was credible. What Trial Counsel may have been suggesting is that, when there is an objection in a bench trial, the Court often hears evidence with the understanding that he or she is able to give it the appropriate weight and to parse through the evidence to separate the inadmissible from the admissible in a way a jury cannot.  Having heard Petitioner

and Trial Counsel, I am convinced that Trial Counsel was telling the truth.

<u>Written Waiver under Superior Court Criminal Rule 23</u>

Petitioner also raises the issue, for the first time, that a written waiver of jury trial was not completed in this case as required by Superior Court Criminal Rule 23.[105] Trial Counsel specifically asked the Judge about submitting a written waiver, to which the Judge responded: "We may have. I haven't done it in so long, I don't know."[106]  In any event, both Trial Counsel and the Judge ensured that an appropriate and extensive colloquy was performed.  In my view, Petitioner's oral waiver of jury trial, clearly memorialized on the record in response to a fulsome colloquy, is more important and significant.  While a written waiver is important and preferable, I am satisfied with the colloquy.

Indeed, in *Davis v. State*,[107] the Delaware Supreme Court held that a colloquy is preferable to the mere acceptance of a defendant's written jury trial waiver, and that Delaware trial judges should conduct colloquies with defendants.[108] The Court found that the purpose of a colloquy is to ensure that the defendant understands the

---

[105] Amended Motion for Postconviction Relief, p.34-35.  Super. Ct. Crim. R. 23(a) provides: "Cases required to be tried by jury shall be so tried unless the defendant waives a jury trial *in writing* with the approval of the Court and the consent of the State." [Emphasis supplied.]
[106] A191.
[107] 809 A.2d 565 (Del. 2002).
[108] *Id*. at 571.

nature of his or her right to trial by jury that is being relinquished and the implications of that decision.[109] The purpose is not to ascertain the underlying objectives for the defendant's decision to forego a trial by jury, since that could impermissibly implicate the defendant's constitutional rights.[110] The Court held that the defendant bears the burden of proving that he or she did not exercise a valid waiver of his or her right to a jury trial.[111] The Court found that the Judge conducted a limited colloquy with Davis, during which Davis testified that he understood his right to a jury trial and to a waiver, and that he had discussed a waiver with his attorney.[112] Based on this, the Court found that Davis failed to demonstrate that his waiver was anything other than intelligent and voluntary, and affirmed the Superior Court's judgment.[113]

Timing of Waiver of Jury Trial

Petitioner also argues that his decision to waive a jury trial was made at the last minute.[114] However, the record shows that Trial Counsel spoke with Petitioner

---

[109] *Id.*
[110] *Id.*
[111] *Id.* at 570 *citing Adams v. United States ex rel. McCann,* 317 U.S. 269, 281 (1942); *United States v. Libretti,* 28 F.3d 523,530 (10th Cir. 1994), *aff'd,* 516 U.S. 29 (1995); *United States v. Robinson,* 8 F.3d 418, 422 (7th Cir. 1993).
[112] *Id.* at 570.
[113] *Id.* at 573.
[114] Amended Motion for Postconviction Relief, p.35.

22

about waiving his right to a jury trial on at least two separate occasions.[115] Although the colloquy and the waiver itself occurred on the morning of trial, both Petitioner and Trial Counsel informed the Court that they had a conversation the week before the trial as well as the day of the trial about the advantages and disadvantages of waiving a jury trial.[116]

Colloquy

The Judge conducted an extensive colloquy to ensure that Petitioner understood both his right to trial by jury and the implications of his decision to waive that right.[117] Furthermore, although Trial Counsel made a recommendation as to Petitioner's waiver of jury trial, the Judge's colloquy demonstrates to me that Petitioner understood that it was his choice and his choice alone to waive a jury trial, and that he could just as well have chosen to have a jury trial.[118] Although Petitioner, with the benefit of hindsight, may now wish that he had chosen differently, he cannot reverse his own decision. In short, I find that Petitioner's waiver of his jury trial was voluntarily, knowingly, and intelligently made.

Petitioner submits that Trial Counsel's advice was deficient under the

---

[115] Al90, A221.
[116] A190, A221.
[117] A220-224.
[118] *Id.*

23

performance prong of *Strickland*. The State submits that Trial Counsel's explanation of the advantages and disadvantages of a jury trial, as well as his strategic advice to choose a judge trial, is owed a strong presumption of professional reasonableness and sound trial strategy, and was not deficient. I do not find that Trial Counsel's advice to Petitioner was deficient under the performance prong of *Strickland*.

**Prejudice to Petitioner**

Assuming *arguendo* that Trial Counsel's performance was deficient, I further find that Petitioner was not prejudiced by any such deficiency. Although I do not have to address the prejudice prong given my finding on the performance prong, I do so to address the parties' disagreement on which standard should be used to determine whether Petitioner was prejudiced by Trial Counsel's performance.

The State initially relied on the traditional *Strickland* prejudice standard: is there a reasonable probability that, but for Trial Counsel's unprofessional errors, the outcome of the trial would have been different; i.e., that Petitioner would have chosen a jury trial and been acquitted? Petitioner relies on the *Vickers* standard: is there a reasonable probability that, but for Trial Counsel's failure to ensure a proper waiver of his right to be tried before a jury, Petitioner would have

24

exercised that right? Under either standard, I find no prejudice.

In *Vickers,* defendant sought federal *habeas corpus* relief after the denial of his state postconviction motion was affirmed on appeal. Neither a written waiver nor an oral waiver of defendant's right to a jury trial was on the record.[119] Had there been, then trial counsel would not have been found to be deficient and no prejudice would have been found.[120] In reviewing defendant's claim, the Third Circuit applied the two-prong *Strickland* test: 1) whether trial counsel's performance was deficient, and 2) whether defendant established the requisite prejudice.[121] The Court found that trial counsel was deficient because he failed to ensure that defendant properly waived his right to a jury trial.[122] The Court found that failure to comply with jury waiver requirements (such as the Delaware requirement for a written waiver) does not establish a *per se* constitutional violation, but such requirements do provide assurance that defendant has been fully apprised of his right to a jury trial and insulates the waiver from constitutional challenge.[123] The Court also found that competent trial counsel is expected to ensure a defendant receives the benefit of these well-established protections; however, defendant's trial counsel did not

---

[119] *Vickers* at 847 (3rd Cir. 2017).
[120] *Id.* at 850-852.
[121] *Id.*
[122] *Id.* at 850.
[123] *Id.* at 851, citing *Gov't of Virgin Islands v. Parrott,* 476 F.2d 1058, 1061-62 (3rd Cir. 1973); *Commonwealth v. Mallory,* 941 A.2d 686, 697-98 (Pa. 2008).

25

conduct any investigation to determine whether defendant had been given an appropriate colloquy before his case was scheduled for a bench trial and simply assumed that there had been a customary waiver.[124]  Had trial counsel reviewed the file, docket or record, he could have ensured that an appropriate colloquy had been completed.[125] Although trial counsel inherited the case only weeks before trial, the Court nonetheless found that he was required to ensure that defendant formally waived his jury trial right.[126] As a result, the Court found that trial counsel's conduct was unreasonable under the performance prong,[127] and turned to the prejudice prong.

The Court held that prejudice should not be presumed;[128] however, where defendant claims ineffective assistance of counsel based on a pre-trial process that caused him to forfeit a constitutional right, the proper prejudice standard is whether defendant can demonstrate a reasonable probability that, but for trial counsel's ineffectiveness, he would have opted to exercise that right.[129] In so holding, the Court modified the prejudice test set forth in *Strickland,* which requires a reasonable probability that, but for trial counsel's unprofessional performance, the result of the

---

[124] *Id.* at 851.
[125] *Id.*
[126] *Id.*
[127] *Id.*
[128] *Id* at 855.
[129] *Id.* at 857.

proceeding would have been different.[130] The Court then found that defendant was unable to establish on the record a reasonable probability that he would have chosen a jury trial but for his counsel's deficiency.[131] Instead, the Court found that the record did not contain any credible evidence that defendant would have chosen a jury trial and instead showed that he made an informed, strategic decision to proceed with a bench trial after numerous consultations with trial counsel.[132]

In my view, Petitioner fails to meet the traditional *Strickland* prejudice test that the result of his trial would have been different. There was overwhelming evidence to convict in his case. The trial judge stated, "I think realistically this case wasn't close at all".[133]

Moreover, applying *Vickers'* modified prejudice test, Petitioner's claim still fails because the record does not establish that he would have chosen a jury trial. Rather, the record shows to me that Petitioner made an informed, strategic decision to proceed with a bench trial after consultations with Trial Counsel. This is what the Court found in *Vickers,* even without the benefit of a colloquy. Although the Court found that defendant's trial counsel's performance was deficient, it denied

---

[130] *Id.* at 856-857.
[131] *Id.* at 858.
[132] *Id.* at 857.
[133] A650.

27

his ineffective assistance of counsel claim and writ of *habeas corpus* because he failed to demonstrate that, but for his counsel's deficiency, he would have had a jury trial.[134]

## V.    CONCLUSION

Since it plainly appears to me from the record of prior proceedings in the case, the Rule 61 Motion, the Affidavit, the Response, the Reply, the evidentiary hearing, the State's Letter Memorandum and Petitioner's Post Hearing Memorandum, that Petitioner is not entitled to relief, I am entering an order for its summary dismissal.[135]

Petitioner Stephen Wheeler's Amended Motion for Postconviction Relief is **DENIED.**


**IT IS SO ORDERED.**

_____
/s/Craig A. Karsnitz


cc:    Prothonotary
       Andre M. Beauregard, Esquire

---

[134] *Vickers* at 858.
[135] Super. Ct. Crim. R. 61(d)(5).

28