IN THE SUPREME COURT OF THE STATE OF DELAWARE

STEPHEN WHEELER,                           §
                                           §   No. 244, 2022
        Defendant Below,                   §
        Appellant,                         §   Court Below: Superior Court
                                           §   of the State of Delaware
                v.                         §
                                           §   Cr. ID No.   1610013171(S)
STATE OF DELAWARE,                         §
                                           §
        Appellee.                          §


                Submitted: January 18, 2023
                Decided:    April 11, 2023


Before **SEITZ**, Chief Justice; **VAUGHN** and **TRAYNOR**, Justices.

Upon appeal from the Superior Court.  **AFFIRMED.**

Patrick J. Collins, Esquire, COLLINS & PRICE, Wilmington, Delaware, *for Appellant Stephen Wheeler*.

Kathryn J. Garrison, Esquire, DELAWARE DEPARTMENT OF JUSTICE, Dover, Delaware, *for Appellee State of Delaware*.

**TRAYNOR**, Justice:

Stephen Wheeler was convicted in the Superior Court of four felonies for his role in a violent home invasion. He was sentenced to 13 years in prison. After this Court affirmed those convictions, Wheeler returned to the Superior Court seeking postconviction relief in the form of a new trial. He says that his convictions are the product of an ill-advised waiver of his right to have his case heard and decided by a jury.

According to Wheeler, his lawyer counseled him to let a judge, sitting without a jury, determine his guilt or innocence. If not for this advice, which was by Wheeler's lights objectively unreasonable, Wheeler claims that he would not have waived his jury-trial right. Said differently, Wheeler contends that he gave up a vitally important constitutional right because of his lawyer's constitutionally deficient representation and that his convictions are so tainted by that decision that they cannot stand.

After an evidentiary hearing at which Wheeler and his trial counsel recounted the circumstances surrounding the jury-trial waiver, the Superior Court denied Wheeler's motion for postconviction relief. Pointing to, among other things, an extensive colloquy between Wheeler and the trial judge—an exchange designed to ensure that Wheeler's waiver was uncoerced and intelligently entered—the court rejected both Wheeler's account of the substance of his lawyer's advice and his claim

that, but for that advice, he would have insisted on a jury trial. The court derived these findings largely from the court's assessment of the relative credibility of Wheeler and his trial counsel. More specifically, the court credited counsel's account of the advice he had shared with Wheeler, while discounting Wheeler's version. The court also found, after hearing from Wheeler and his trial counsel at a postconviction evidentiary hearing, that Wheeler had made an informed strategic decision to proceed with a bench trial. Because we defer to these credibility determinations and because the Superior Court's decision is otherwise free from error, we affirm the denial of Wheeler's motion.

## I

### A

The charges leveled against Wheeler—home invasion, assault in the second degree, robbery in the second degree, and conspiracy in the second degree—stemmed from the October 2016 assault and robbery of Gerald Mueller. The assault and robbery occurred within Mueller's Millville residence; it was an inside job.

It seems that Mueller, who was 64 years old at the time, kept large quantities of cash in his house, a fact that was well-known by Lauren Melton, a 19 year-old who had recently moved into Mueller's house. Although Melton stayed at Mueller's

3

house "almost every night," sleeping "[i]n his bedroom or the spare bedroom,"[1] she was also "dating"[2] Wheeler.

On October 19, Melton spent much of the day with Wheeler "riding around."[3] During that time, Wheeler, who was also aware of Mueller's penchant for keeping large amounts of cash on hand, confided in Melton that he planned to rob Mueller. Wheeler dropped Melton off at Mueller's house around 8:00 p.m., and Melton and Mueller spent the rest of the evening watching television, after which they went to bed together.

After Mueller fell asleep, Wheeler and his cousins Jerome and Pat entered the home through the backdoor armed with guns. Once inside Mueller's bedroom, Jerome and Pat beat the sleeping Mueller with their fists, asking "where is the money?" and "what's the combination for the safe?"[4] Mueller's hands were bound, and he was choked with a belt and hit in the face with a heavy lamp. Meanwhile, Wheeler and Melton tried to open Mueller's safe. When Wheeler, who brought a bag of tools, opened the safe and learned that it was empty, he, Jerome and Pat ransacked the house, stealing various electronics as well as Mueller's wallet, before leaving. Later, Melton helped Mueller get out from underneath a large dresser that

---

[1] App. to Opening Br. at 343.
[2] *Id.* at A342.
[3] *Id.* at A345.
[4] *Id.* at A313–15.

4

had been pushed on top of him. Mueller used Melton's cellphone to call 911, and then Melton texted Wheeler and called her mother. Mueller suffered multiple broken ribs and a broken nose.

Although Melton feigned innocence when the police arrived, it became apparent to the police that Melton was complicit in Wheeler's invasion of Mueller's home and the attendant assault and robbery. In particular, a consensual search of Melton's cellphone revealed incriminating text messages in which Melton told Wheeler, among other things, that the backdoor of the residence was unlocked and alerted him when Mueller had fallen asleep. Several months later, Melton agreed to cooperate in the prosecution of Wheeler.[5]

B

After Wheeler was indicted on the previously mentioned charges, his case was eventually scheduled for trial. Two exchanges between counsel and the trial judge shortly before jury selection was to begin on the first day of trial set the stage for Wheeler's jury-trial waiver.

At an office conference, the prosecutor expressed concern that Wheeler would attempt to introduce an irrelevant video recording found on Melton's phone. In

---

[5] Melton was named as Wheeler's codefendant in each of the four counts of Wheeler's indictment. She entered into a plea agreement in April 2017 under which she pleaded guilty to four misdemeanors and agreed to testify against Wheeler at his trial. After she did that, she was sentenced to time served, which was approximately six months. Jerome Wheeler was indicted separately and eventually pleaded guilty to robbery in the first degree and conspiracy in the second degree. He was sentenced to three years in prison followed by one year of probation.

response, Wheeler's counsel confirmed that he would seek to admit a video that depicted Melton having sex with another female while Mueller watched and masturbated. Not surprisingly, the trial judge asked counsel to explain how the video was relevant to the home invasion and related crimes. Wheeler's counsel replied that, because Melton—slated to testify as a prosecution witness—had denied in a pretrial statement that the recorded incident had happened, the video could be used to impeach her credibility. Counsel also contended that the video "goes to moral turpitude"[6] and also "could show a biasness [*sic*] towards the old man that she's testifying on behalf of."[7] Stating that, as a general matter, this type of evidence is inadmissible under D.R.E. 608,[8] the trial judge advised Wheeler's counsel to exercise caution before seeking the admission of the video. Specifically, the court admonished counsel, "Before you ask your questions in there, . . . you ask me before you ask the question[.] . . . [And] you better go get some [Rule] 608 brushup before you walk into the courtroom."[9]

Chastened by the court's comments, Wheeler's counsel met with Wheeler in the courthouse lockup and then reported back to the court:

---

[6] App. to Opening Br. at A182.
[7] *Id.* at A183.
[8] D.R.E. 608 provides, in relevant part, that "[e]xcept for criminal conviction under Rule 609 or evidence of bias under Rule 616, extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's character for truthfulness. But the court may, on cross-examination, allow them to be inquired into if they are probative of the character for truthfulness or untruthfulness of . . . [t]he witness. . . ."
[9] App. to Opening Br. at A183.

Your Honor, I just went down to talk to my client again. Last minute thing. And last week when we were talking, he was mentioning about waiving jury or not. And I went through the benefits and the downfalls with waiving a jury.

I told him what was going on this morning. I went down again. He says, I still feel that I want to waive jury. I said, Here's the benefit, here's the downfall, it's up to you. All parties have to agree. It's not just us. It's the judge and the State.[10]

Wheeler's counsel added that the State was not opposed to a bench trial.

Although dismayed by this late-breaking development because a pool of jurors had been summoned and was waiting dutifully for jury selection to begin, the court agreed to consider Wheeler's waiver but only if he "waives on the record . . . [and] understands what he's doing."[11] Wheeler's counsel then asked if the court had a written waiver form. The court answered candidly: "We may have. I haven't done it in so long, I don't know."

Nothing further was mentioned—or done—about Wheeler waiving his right to a jury trial in writing despite a Superior Court rule that contemplates that such waivers will be in writing. Even so, Wheeler was brought before the trial judge in open court for the purpose of exploring his understanding of the significance of a jury-trial waiver. Because the ensuing colloquy between the court and Wheeler is

---

[10] *Id.* at A190.
[11] *Id.* at A191.

central to Wheeler's postconviction relief claim and its denial by the Superior Court,

we reproduce it here, with the exception of non-substantive edits, in its entirety:

> THE COURT: [T]he question. . . was raised . . . that you may wish to waive a jury trial and have a bench trial.
> Is that correct?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT [to Counsel]:  All right.
> Is there anything you wish to say before I have a colloquy with the gentleman?
>
> COUNSEL:  No, Your Honor.
> I actually explained to him that you were going to have a colloquy.  I went over the rights.  Obviously, the colloquy will cover what I went over with him and what he believes the benefits are and the downfalls of waiving a jury.
>
> THE COURT [to the Defendant]:  I don't give you an opinion.  I just tell you what your rights are and you make the decision.
> Do you understand that?
>
> THE DEFENDANT:  Yes, sir.
>
> THE COURT:  Your lawyer is the one that advises you.
> We were prepared this morning, I already had the jury, the jury is in Courtroom 1, to proceed with a selection of a jury and have a jury trial concerning your case.  [Your lawyer] has advised me this morning that you have thought about some discussions you had with him last week further and wish to waive a jury trial.
> Is that correct?
>
> THE DEFENDANT:  Yes, sir.
> . . . .
>
> THE COURT:  There are certain decisions that you get to make and only you get to make.  For example, to take a plea or go to trial, that's your call.  To have a jury trial or have a bench trial, have a judge

8

try it, that's your call.  And then the final one that's exclusively your call is whether you testify at trial or remain silent.  That's your call completely, too.  [For] [e]ach one of those[,] you get your advice from your lawyer, but you make the decision.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  You're the captain of your ship.

If you waive a jury trial, this is what you give up:  A jury consisting of 12 citizens of Sussex County, and the 12 citizens would listen to the evidence and listen to the testimony, and at the end of the trial, they would be asked to make a verdict.

For them to make a verdict which ends the case, there are two possible verdicts; guilty and not guilty.  All 12 jurors have to be in complete agreement that you're guilty, [and] all 12 have to be in complete agreement that you're not guilty in order to reach one of those verdicts.  The jurors decide the facts of the case based on the testimony.  They must apply the law as instructed by the judge.

If at the end of trial the 12 of them can't agree, we don't ask them whether it's 11 to 1, 1 to 11, 7 to 5 or 8 to 4.  We just set it down for another trial.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  So in a jury trial, the jury applies the law, as instructed by the judge, to the facts as they find them, based upon all of the testimony, and they make the credibility determinations and basically attempt to decide what happened.

When you have a bench trial, the judge does everything.  He has to apply the same law, but the judge makes the credibility determinations and makes the finding of facts.

Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT:  Is it your personal decision that you would rather have a judge try this case than a jury?

9

THE DEFENDANT:  I would have a judge trial.

THE COURT:  You want to have a jury trial?

COUNSEL:  He said "judge," Your Honor.

THE COURT:  I'm sorry.  A judge trial?

THE DEFENDANT:  A judge trial.

THE COURT:  This is your decision?

THE DEFENDANT:  Yes, sir.

THE COURT:  Nobody is forcing you or threatening or twisting your arm.  This is how you want to do it?

THE DEFENDANT:  Yes, sir.[12]

The court accepted Wheeler's waiver and held a bench trial.  Over the course of the next two days, the court heard from eight witnesses, including Melton and Mueller.  Wheeler did not testify at trial and called no witnesses in his defense.

Despite the court's pretrial comments—made when it appeared that the case would be heard by a jury—about the relevance of Melton's and Mueller's sexual conduct, the court, now sitting as the trier of fact, granted Wheeler's counsel considerable leeway on that subject during the trial.  For instance, in his opening statement, Wheeler's counsel pointed out that the 64-year-old Mueller lived with several female teenagers for whom he would buy drugs and with whom he would

_____

[12] *Id.* at A220–23.

10

have sex.  And during his cross-examination of Melton, Wheeler's counsel elicited admissions from Melton that she engaged in prostitution and that, the first time she met Mueller, he paid her $300 and the two had sexual intercourse.  But when counsel pressed Melton on whether anyone video-recorded the "threesomes" she participated in with Mueller—a fact that the court allowed in over the prosecutor's objection— the court, consistently with its pretrial comments, shut down the line of questioning.

In the end, however, the lascivious testimony Wheeler's counsel was able to elicit did not influence the trial judge's verdict.  Instead, the court focused on the previously described text messages and Melton's trial testimony, which the court characterized as "blunt and honest."[13]  For the court, "this case wasn't close at all."[14] It found Wheeler guilty on all counts and a week later sentenced him to 13 years of incarceration at supervision Level V.

C

Wheeler appealed his convictions to this Court, raising two issues: (1) that his phone was unlawfully seized in violation of the Fourth Amendment, and (2) that there was insufficient evidence to support his robbery conviction.[15]  We found no merit in either of these arguments and affirmed the judgment of the Superior Court.[16]

---

[13] *Id.* at A648.
[14] *Id.* at A650.
[15] *Id.* at A794–95.
[16] *Wheeler v. State*, 209 A.3d 24, 2019 WL 1579600 (Del. Apr. 11, 2019) (TABLE).

D

Wheeler then filed a timely *pro se* motion for postconviction relief under Superior Court Criminal Rule 61. After counsel was appointed to represent Wheeler, he filed an amended motion, which contained a single claim: that he was deprived of the right to a jury trial because of his counsel's deficient performance. The gravamen of Wheeler's claim was encapsulated in his sworn affidavit:

> I wanted to have a jury trial but [my lawyer] told me it was better to have a bench trial. He told me on the morning of trial that a bench trial would be better because certain evidence could come in with a judge that could not come in with a jury. I accepted [my lawyer]'s advice and waived a jury trial. [My lawyer] never explained to me what evidence would be admissible in a bench trial but not a jury trial.[17]

In a responsive affidavit filed at the Superior Court's direction, Wheeler's trial counsel stated:

> Trial Counsel . . . believe[s] that all conversations, arguments, court proceeding[s] and oral representations in chambers or in open Court are most accurately depicted in the transcripts of those proceedings, in the contexts [sic] in which they were given, and not as Movant has cherry-picked the facts as presented in his Amended Motion for Post-conviction Relief. . . . Trial Counsel admits that the evidence of salacious material involving the victim, Mr. Mueller and the Co-Defendant and her friends was ruled inadmissible[.] . . . Trial Counsel believes that upon cross-examination of Mr. Muller [sic], the Court should have allowed an inquiry into the probativeness of his character for truthfulness based on moral turpitude pursuant to Rule 608 (b) of the Delaware Rules of Evidence. . . . Trial Counsel discussed and advised the benefits and disadvantages of a jury verses [sic] a non-jury trial with the Movant's matter which included the roles which a Presiding Judge would be as a finder of fact and that

---

[17] App. to Opening Br. at A832.

of a finder of law. Both roles by one person and would not be separate roles of a Jury and Judge. Trial Counsel believes he was explicit in his discussion and believes that the Movant's misinterpretated [sic] this discussion in his assertions in his affidavit submitted. . . . Finally, Trial Counsel agrees that there was no written waiver of Movant's rights to waive a Jury Trial and agrees that the Court's oral colloquy is reflective in the proceeds [sic] transcripts.[18]

Because of the lack of clarity in counsel's affidavit, the Superior Court scheduled an evidentiary hearing so that counsel's explanation of the advice he had given would be subject to cross-examination by Wheeler. Wheeler and his trial counsel testified at the hearing, and their versions of their pre-waiver discussions differed from each other.

Wheeler testified, for example, that there had been no discussions with his counsel about the difference between a bench trial and a jury trial, except those that occurred on the first day of trial. He recalled that he had two meetings with his counsel that morning, and that, contrary to what he told the trial judge during the waiver colloquy, the first time that he and his counsel discussed a jury-trial waiver was during the second meeting. By contrast, Wheeler's counsel testified that he and Wheeler discussed the topic at least two times—once before trial and again on the first day of trial.

As to the substance of Wheeler's counsel's advice, Wheeler's testimony did not stray from the account given in his affidavit. According to Wheeler, his lawyer

---

[18] *Id.* at A882–86.

13

told him that "it's best for me to have a bench trial because certain evidence could come in in a bench trial that couldn't come in during a jury trial."[19] Explaining why he told the judge in the pre-waiver colloquy that he wished to waive his right to a jury trial, Wheeler said, "I went with my lawyer's advice. I thought . . . he knew what was best."[20]

Wheeler's counsel recounted the substance of his advice in similar, if slightly more nuanced, terms. He testified that he never told Wheeler that a judge or jury trial would be better or worse—"I just gave him options."[21] Counsel testified that, in addition to the issue of the lascivious impeachment evidence, he had multiple concerns that influenced his views on whether a bench trial might be preferable to a jury trial. His concerns included the unavailability of a witness whose attorney would not let him testify—a fact that a jury might construe against Wheeler—as well as racial considerations given that Melton and Mueller were white and Wheeler was Black.

Although Wheeler's counsel was unsure whether he had shared all of his concerns with Wheeler, he testified that he had explained to Wheeler, who was "very active in his defense,"[22] about the dual role a judge plays in a bench trial:

---

[19] *Id.* at A951–52.
[20] *Id.* at A954.
[21] *Id.* at A979.
[22] *Id.* at A971.

14

But I did tell him about the fact that the judge, if you have a bench trial, he will see or hear the evidentiary arguments before being made and make a decision on those arguments, and he will also be the finder of fact. So everything goes in front of a judge in a bench trial. In a jury trial, the jury doesn't see the evidentiary arguments and just sees what the evidence presented that would be admitted by the judge. So I explained that to him, and I believe -- I can't be certain, but the concern about trying to at least get the flavor that Mr. Mueller was -- didn't have clean hands.[23]

Wheeler's counsel acknowledged that, as a legal matter, the judge as fact-finder cannot be influenced by what he hears during argument; "[t]hey have to keep it separate."[24] He explained, however, that "[w]hen I prepare for any trial, any advantage, whatever that advantage might be, within the realms of the law, I will take if it might be advantageous."[25]

E

Wheeler urged the Superior Court to find that his counsel's advice was so erroneous and deficient as to constitute ineffective assistance of counsel—a conclusion that, according to Wheeler, warrants a new trial. The court, however, was not persuaded, making consequential credibility findings that eroded the foundation of Wheeler's claim. It found "serious discrepancies"[26] in Wheeler's testimony. By contrast, the court was convinced that Wheeler's counsel "was telling

---

[23] *Id.* at A973.
[24] *Id.* at A974.
[25] *Id.*
[26] *Wheeler*, 2022 WL 2134686, at *7.

15

the truth"[27] during the Rule 61 evidentiary hearing. And more specifically, the court found that "[Wheeler's counsel's] testimony that he did not tell [Wheeler] that a bench trial would be better than a jury trial, because certain evidence could be admitted in a bench trial that could not be admitted in a jury trial, was credible."[28] As we read the Superior Court's opinion, these credibility determinations underpin the court's ultimate conclusions that (i) Wheeler's counsel's advice was not constitutionally deficient, and (ii) "[Wheeler] made an informed, strategic decision to proceed with a bench trial after consultations with Trial Counsel."[29] Based on these conclusions, the court denied Wheeler's motion for postconviction relief.

In this appeal, Wheeler contends that the Superior Court erred in denying his postconviction relief motion and insists that his counsel's constitutionally deficient advice caused him to waive his right to a jury trial. He now says that, but for his counsel's deficient performance, he would have exercised his right to a jury trial. Wheeler also claims that the absence of a written waiver as required by Delaware Superior Court Criminal Rule 23(a) is further evidence of his trial counsel's deficient performance.

---

[27] *Id.*
[28] *Id.*
[29] *Id.* at *9.

16

## II

We review the Superior Court's denial of postconviction relief for abuse of discretion.[30] We will not disturb the trial court's factual determinations on appeal "if they are based upon competent evidence and are not clearly erroneous."[31] In deciding legal or constitutional questions, we apply a *de novo* standard of review.[32]

## III

### A

To establish that his right to effective assistance of counsel was curtailed, Wheeler must show "first, that his counsel's representation fell below an objective standard of reasonableness and, second, that the deficiencies in counsel's representation caused him substantial prejudice."[33] These are the frequently cited "well-worn standards" applicable to ineffective-assistance-of-counsel claims announced by the United States Supreme Court nearly four decades ago in *Strickland v. Washington*.[34] We may uphold the denial of an ineffective-assistance claim without addressing the reasonableness of trial counsel's performance if prejudice is lacking.[35]

---

[30] *Gattis v. State*, 955 A.2d 1276, 1280–81 (Del. 2008).
[31] *Burrell v. State*, 953 A.2d 957, 960 (Del. 2008).
[32] *Ploof v. State*, 75 A.3d 811, 820 (Del. 2013).
[33] *Green v. State*, 238 A.3d 160, 174 (Del. 2020).
[34] 466 U.S. 668 (1984).
[35] *Id.* at 697.

In this case, Wheeler does not complain that his counsel's trial performance was lacking. Instead, he claims that the advice his counsel provided in advance of his jury-trial waiver was "manifestly deficient"[36] because it was erroneously grounded in a flawed understanding of the rules of evidence. Implicit in Wheeler's claim is that it is objectively unreasonable for defense counsel to advise his client that evidence that was inadmissible at a jury trial could be admitted in a bench trial. No reasonable lawyer would, according to Wheeler, give that advice.

Framed in this manner, Wheeler's argument is more than colorable. But, unfortunately for Wheeler, the Superior Court rejected his characterization of his counsel's advice and did so because it found counsel's rendition of the advice more credible than Wheeler's. As quoted above, the court was "convinced that Trial Counsel was telling the truth,"[37] while finding "serious discrepancies in [Wheeler's] testimony."[38]

When a trial court acts as fact-finder, its findings will not be disturbed on appeal if they are supported by the record and are the product of an orderly and logical deductive process.[39] "When the determination of facts turns on the credibility of the witnesses who testified under oath before the trial judge, this Court will not

---

[36] App. to Opening Br. at A866.
[37] *Wheeler*, 2022 WL 2134686, at *7.
[38] *Id.*
[39] *Levitt v. Bouvier*, 287 A.2d 671, 673 (Del. 1972).

substitute its opinion for that of the trial judge."[40]  We see no reason here to depart from these time-honored principles of appellate review.  Thus, we accept the trial court's assessment of the relative credibility of Wheeler and his trial counsel. Concomitantly, we reject, as the Superior Court did, "[Wheeler's] claim that he was given incorrect advice as to the type of evidence a Judge could receive in a bench trial"[41] and accept counsel's version of the advice he gave Wheeler.

We turn then to the advice Wheeler's counsel offered to Wheeler as he considered whether he should waive his right to a jury trial.  Counsel testified that he had "several conversations with Mr. Wheeler concerning the benefits and the drawbacks for having a jury or nonjury trial."[42]  Although counsel did not tell Wheeler that evidence that was inadmissible before a jury would be admissible before the judge, he did suggest that the judge would be exposed to inadmissible evidence when considering evidentiary objections.  Specifically, he recalled how he broached this topic with Wheeler:

> [I]f you have a bench trial, [the judge] will see or hear the evidentiary arguments before being made and make a decision on those arguments, and he will also be the finder of fact.  So everything goes in front of a judge in a bench trial. . . . In a jury trial, the jury doesn't see the evidentiary arguments and just sees . . . the evidence presented that

---

[40] *Vann v. Daniels*, 45 A.3d 150, 2012 WL 1852233, at *1 (Del. May 21, 2012) (TABLE); *Meding v. Meding*, 584 A.2d 1228, 1990 WL 197839, at *1 (Del. Nov. 7, 1990) (TABLE); *O'Brien v. State*, 820 A.2d 372, 2003 WL 897431, at *2 (Del. Mar. 6, 2003) (TABLE) ("Questions of witness credibility and the resolution of conflicts in witness testimony lie solely within the province of the trier of fact.").

[41] *Wheeler*, 2022 WL 2134686, at *1.

[42] App. to Opening Br. at A965–66.

would be admitted by the judge. So I explained that to [Wheeler], and I believe -- I can't be certain, but the concern about trying to at least get the flavor that [the victim] -- didn't have clean hands.[43]

Wheeler's counsel recalled that he explained the available options to Wheeler, who actively participated in his defense, but emphasized that the choice between a bench trial and a jury trial was Wheeler's to make. Finally, Wheeler's counsel denied Wheeler's charge that he directed Wheeler how to respond to the trial judge's questions during the waiver colloquy.

Although counsel's advice regarding the trial judge's exposure to inadmissible evidence could be viewed as technically correct, it is also suggestive of a dubious trial strategy, one we are loath to condone. After all, putting inadmissible evidence before an experienced trial judge knowing that it must be ignored when the judge renders his verdict is of questionable value.[44] Wheeler's trial is a case in point. The trial judge gave Wheeler's counsel a wide berth, allowing evidence that painted Mueller as a dissolute and opportunistic man. The court also allowed testimony that showed Melton was mired in a world of sex, drugs, and deception. We will never know whether, had the case been tried to a jury, the court would have been so tolerant of Wheeler's forays into these unseemly details. In the end, however, the court based

---

[43] *Id.* at A973

[44] *See Burke v. State*, 692 A.2d 411, 1997 WL 139813, at *2 (Del. Mar. 19, 1997) (TABLE) ("[A] judge, sitting as a trier of fact, is presumed to have made his verdict only on the admissible evidence before him and to have disregarded that which is inadmissible.") (alteration in original) (quoting *United States v. Cardenas*, 9 F.3d 1139, 1156 (5th Cir. 1993)).

its verdict, not on Mueller's and Melton's lifestyles, but on the cellphone evidence and Melton's "blunt and honest" in-court testimony.

Despite our misgivings over the nature and clarity of counsel's strategic advice to Wheeler, we must under *Strickland*'s performance prong "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance."[45]  As *Strickland* reminds us, "[n]o particular set of detailed rules for counsel's conduct can satisfactorily take account of the variety of circumstances faced by defense counsel or the range of legitimate decisions regarding how best to represent a criminal defendant."[46]

Here, Wheeler's counsel considered his inability to get certain evidence of which the trial judge was aware before a jury, as well as the racial make-up of the key actors, and the possibility that a key witness might refuse to testify.  Counsel suggested to Wheeler that he should consider a bench trial because of those factors, but made it clear that the decision was Wheeler's to make.  Counsel undoubtedly drew comfort from his knowledge that, should Wheeler opt for a bench trial, the trial judge would carefully question Wheeler to ensure that his waiver was knowing, intelligent, and voluntary.  Under these circumstances, it was not an abuse of

---

[45] *Strickland*, 466 U.S. at 689.
[46] *Id.* at 689–90.

21

discretion for the Superior Court to conclude that Wheeler's trial counsel's performance—and specifically his pre-waiver advice—was not deficient.

B

Wheeler also argues that "[i]t was error to hold that . . . Wheeler's waiver was valid absent a written waiver."[47] Wheeler notes that, under Superior Court Criminal Rule 23(a), "[c]ases required to be tried by jury shall be so tried unless the defendant waives a jury trial *in writing* with the approval of the court and the consent of the state." (Emphasis added.) But Wheeler did not raise this argument on direct appeal and thus it is barred under Rule 61(i)(3) unless he shows "[c]ause for relief from the procedural default and . . . [p]rejudice from violation of . . . [his] rights."

Wheeler makes no effort to show "cause and prejudice." He attempts instead to fold this claim into his ineffective-assistance-of-counsel claim. This fails for two independent reasons. First, Wheeler did not cite the failure to secure a written waiver as a performance deficiency in his motion for postconviction relief or related papers in the Superior Court; hence, this argument is waived under Supreme Court Rule 8.[48] Secondly, Wheeler ignores the fact that his trial counsel actually suggested to the trial judge, immediately before the waiver colloquy, that "an actual waiver on

---

[47] Opening Br. at 41.

[48] Supr. Ct. R. 8 ("Only questions fairly presented to the trial court, may be presented for review; provided, however, that when the interests of justice so require, the Court may consider and determine any question not so presented.").

paper"[49] might be appropriate. Wheeler does not explain why it was objectively unreasonable for his trial counsel to refrain from pressing more fervently for a written waiver when the trial judge shrugged off this suggestion. Nor does Wheeler contend that, had he been asked to execute a written waiver form, he would have changed his mind and retracted the answers he gave under oath to the trial judge during the waiver colloquy. In short, Wheeler's claim that he is entitled to a new trial because of the absence of a written jury-trial waiver is without merit.

C

Despite its determination that Wheeler's counsel's advice passed muster under *Strickland*'s performance prong—a determination that, standing alone, was case dispositive—the Superior Court pressed on and considered the prejudice issue. We do likewise for the purpose of clarifying the proper prejudice standard to apply when pretrial waivers of important constitutional rights are involved.

Under *Strickland*'s prejudice standard, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome."[50] Applied here—and, in the Superior Court and at oral argument in this Court the State suggested it did apply—

---

[49] App. to Opening Br. at A191.
[50] *Strickland*, 466 U.S. at 694.

this standard would require Wheeler to show that, had Wheeler's counsel not given Wheeler deficient advice, he would have exercised his right to a jury trial, the result of which would have been different than the bench trial that actually occurred.[51]

Wheeler argues, as he did below, that the *Strickland* prejudice standard does not apply to a deficiently counseled jury-trial waiver. The correct standard, according to Wheeler, was articulated by the United States Court of Appeals for the Third Circuit in *Vickers v. Superintendent Graterford SCI*.[52] Like this case, *Vickers* involved a claim of ineffective assistance of counsel in connection with a jury-trial waiver that was not evidenced by either a written or an oral waiver. Vickers' counsel, who had inherited the case only weeks before trial, had "assumed there had been a normal waiver at the bar and whatnot like that."[53] The court held that "prevailing professional norms required and continue to require counsel in this circumstance to verify, through a review of the record or an inquiry with the court or prior counsel, that the client formally waived his jury trial right."[54] Counsel's failure to conform to this norm constituted deficient performance under *Strickland*, so the court turned to the issue of prejudice.

---

[51] The State's answering brief appears to concede that the *Vickers* prejudice standard, discussed more fully next, applies in this case.

[52] 858 F.3d 841 (3d Cir. 2017).

[53] *Id.* at 851.

[54] *Id.*

24

The Court of Appeals first determined that Vickers' counsel's deficient performance, under the circumstances, did not constitute a structural error and thus that prejudice should not be presumed. In ascertaining the proper prejudice test, the court looked to a trio of United States Supreme Court cases that explained the appropriate inquiry in similar circumstances. In *Hill v. Lockhart*,[55] which involved a guilty plea that was the product of ineffective assistance, the Supreme Court did not require a showing that the petitioner would not have been convicted had he gone to trial instead of pleading. The proper inquiry was "whether counsel's constitutionally ineffective performance affected the outcome of the plea process."[56]

In *Roe v. Flores-Ortega*[57] and *Lafler v. Cooper*,[58] the Supreme Court adopted a similar approach. In *Flores-Ortega*, a case involving the petitioner's forfeiture of his right to appeal because of deficient advice, the Court held that, to establish prejudice, the petitioner had to show that "but for counsel's deficient conduct, he would have appealed."[59] And in *Lafler*, where the performance took the form of advice to reject a plea offer, the Court held that the prejudice inquiry must ask whether, but for counsel's ineffective assistance, the petitioner would have accepted the guilty plea.

---

[55] 474 U.S. 52 (1985).
[56] *Id.* at 59.
[57] 528 U.S. 470 (2000).
[58] 566 U.S. 156 (2012).
[59] *Flores-Ortega*, 528 U.S. at 486.

The *Vickers* court aptly synthesized those United States Supreme Court precedents:

> Although acknowledging that the "[t]he goal of a just result is not divorced from the reliability of a conviction," the Court in *Lafler* made explicit the principle underlying its decisions in *Hill* and *Flores-Ortega*—that when evaluating prejudice in the context of a pre-trial error that changed the nature of the subsequent proceedings, the "question is not the fairness or reliability of the trial but the fairness and regularity of the processes that preceded it, which caused the defendant to lose benefits he would have received in the ordinary course but for counsel's ineffective assistance."[60]

Reading *Hill*, *Flores-Ortega*, and *Lafler* together, the *Vickers* court was persuaded that the Supreme Court had unquestionably redirected the focus of the *Strickland* prejudice inquiry in the pretrial waiver context. Under these circumstances, no longer is the inquiry directed to the likely outcome of the defendant's hypothetical trial. Instead, "where a defendant claims ineffective assistance based on a pre-trial process that caused him to forfeit a constitutional right, the proper prejudice inquiry is whether the defendant can demonstrate a reasonable probability that, but for counsel's ineffectiveness, he would have opted to exercise that right."[61]

In this case, the Superior Court noted that the parties took differing approaches to the prejudice issue, the State suggesting that the traditional *Strickland* approach

---

[60] *Vickers*, 858 F.3d at 856 (quoting *Lafler*, 566 U.S. at 169).
[61] *Id.* at 857.

26

was preferable and Wheeler favoring the *Vickers* formulation. Rather than adopting one approach or the other, though, the court separately evaluated Wheeler's prejudice claim under both standards and found it lacking under both. Pointing to "overwhelming evidence to convict"[62] and the trial judge's comment when announcing his verdict that the case "wasn't close at all,"[63] the court found that Wheeler had not satisfied the traditional *Strickland* prejudice standard. The court found further that the record did not establish that Wheeler would have chosen a jury trial, but for his counsel's purportedly erroneous description of how the rules of evidence operate in a bench trial. Thus, Wheeler's prejudice claim also failed under *Vickers*.

In our view, the Superior Court's findings of the absence of prejudice are supported by the record. And that view holds under either of the prejudice rubrics discussed above. The record establishes that Wheeler was an active participant in his defense and that there were reasons other than counsel's inartful explanation of the rules of evidence that motivated Wheeler's jury-trial waiver. And neither Wheeler's affidavit nor his evidentiary-hearing testimony establishes that his waiver decision turned on his counsel's comments concerning his ability to get inadmissible

---

[62] *Wheeler*, 2022 WL 2134686, at *9.
[63] App. to Opening Br. at A650.

27

evidence before the trial judge.[64]  In sum, the Superior Court did not abuse its discretion by finding that Wheeler had not shown that he was prejudiced by his counsel's deficient performance.

That being said, we write further to answer the question our prior case law has left unanswered.  Here, we agree with Wheeler that the Third Circuit's interpretation in *Vickers* of the United States Supreme Court's holdings in *Hill*, *Flores-Ortega*, and *Lafler* is correct.  When a criminal defendant waives an important constitutional trial right because of the ineffective assistance of counsel, a defendant shows that he has been prejudiced when he demonstrates a reasonable probability that he would have exercised that right in the absence of counsel's ineffective assistance.  Wheeler did not make that showing in this case.

## IV

For the reasons set forth above, we affirm the Superior Court's June 14, 2022 Memorandum Opinion and Order, denying Wheeler's Amended Motion for Postconviction Relief.

---

[64] To be fair, Wheeler testified that his reason for "switching from jury [trial] to bench [trial] on the day of trial," was "because . . . he told me that he was going to get some evidence in," (*see* App. to Opening Br. at A952) a statement that could be read as checking this box.  But we do not view this answer as being so clear, especially in light of the Superior Court's other findings, that it mandates, without more, a finding of prejudice.